DUHRING vs. DUHRING. (Cross Appeal.)

1. The widow of a partner of an insolvent firm is not entitled to dower in real estate bought by the firm as partnership property, and afterwards conveyed in payment of a partnership debt.

*Appeal from St. Louis Circuit Court.*

This was a petition by the widow of Andrew Duhring, for dower in a lot on Main street, in the city of St. Louis, in the possession of Henry Duhring.

Barrett Williams and Andrew Duhring were partners in business in St. Louis, from 1834 to 1839. The lot in question was, by Joseph Bouju and wife, on the 30th of July, 1836, conveyed to said Williams & Duhring, in consideration of $22,500, $5000 of which was paid in cash out of the funds of the firm, and for the balance, eight equal notes of the firm, secured by a mortgage, were given, payable annually. The grantees in the deed from Bouju were described as "Barrett Williams and Andrew Duhring, composing the firm of Williams & Duhring." The *habendum* clause in the deed was as follows: "To have and to hold, &c., unto them, the said Barrett Williams and Andrew Duhring, and to their heirs and assigns

forever." The firm had occupied a store on the southern half of the lot before the purchase, and continued to occupy the same store afterwards. A store upon the northern half they rented out. The purchase was entered upon the books of the firm as a partnership transaction. The lot was entered in the "property account," the money paid in the "cash account," and the notes given, under the head of "bills payable." On the 10th of May, 1839, before any of the notes secured by the mortgage had been paid, Barrett Williams, Andrew Duhring and his wife, the plaintiff, joined in a deed conveying the lot to the defendant. The firm of Williams & Duhring was indebted to the defendant about $7000, and the lot was taken by him in payment, he assuming the payment of the notes secured by the mortgage, all of which were afterwards paid by him. The firm was actually insolvent at the time of this conveyance, and in November following, failed and made an assignment. All their debts have never yet been paid. At the time of the conveyance to Henry Duhring, the plaintiff was under twenty-one years of age, for which reason, she now seeks to avoid the conveyance and obtain her dower in the lot. The defendant set up in his answer, that the plaintiff was not entitled to any dower in the lot, because it was bought, held and used by the firm of Williams & Duhring, as partnership property ; and that, even if she was entitled to dower at all, it was not until she had paid her proportion of the mortgage debt paid by him to Bouju. The cause was tried by the court without a jury. Barrett Williams testified that the purchase of the lot by the firm of Williams & Duhring was a partnership transaction, and that entries were made upon the books as above stated. On cross-examination, he stated that the lot was bought "as an investment, to keep until the firm closed business." The court, after finding the facts as above stated in regard to the deed from Bouju, the mortgage, the deed to the defendant, the occupation of the lot, and the entries upon the books of Williams & Duhring, found that the purchase by said firm "was regarded, at the time of making the same, as a mere investment, with a view and inten--

tion of ultimately keeping the same." Upon these facts, the court declared that the plaintiff was entitled to her dower in the undivided one half of the lot, subject, however, to the payment of one-sixth of the debt secured by the mortgage to Bouju, and ordered a reference to ascertain the amount of principal and interest due defendant on the mortgage, after deducting the nett rents and profits received, or which might, with reasonable diligence, have been received by him from the lot, not charging him with the increased rents arising from any permanent improvements erected by him, and making him reasonable allowances for money paid for taxes and repairs, &c. If the plaintiff should, within six months from the confirmation of the commissioner's report, pay one-sixth of the amount thus ascertained to be due the defendant, then her dower was to be set apart to her: if not, her dower was to be barred. From this judgment, both parties appealed. The cause was argued in this court by Mr. Casselberry, for the widow, and Mr. Shepley, for the defendant.

Mr. *Casselberry* made the following points: 1. The widow is entitled to dower, even where the partners purchase real estate with joint funds for partnership purposes. (2 Edwards' Ch. Rep. 28. *Thornton* v. *Dixon*, 3 Brown's Ch. Rep. 199. *Bell* v. *Phyn*, 7 Vesey 453. *Balmain* v. *Shore*, 9 Vesey, 500. *Coles* v. *Coles*, 15 Johns. Rep. 159. 7 Serg. & Rawle, 438. *Titus* v. *Neilson*, 5 Johns. Ch. Rep. 452. Park on Dower, 106, 9 Law Lib.) 2. There is nothing in this case to show that the property was purchased for partnership purposes. On the contrary, one half of the lot was rented out and never used by the firm; and the whole lot was bought " as an investment, to keep." 3. The lot was held by Williams & Duhring as tenants in common and not as joint tenants. by virtue of the act of 1835. 4. The court erred in requiring the widow to pay off a part of the mortgage before obtaining her dower. The mortgage of which defendant assumed the payment is to be regarded as a part of the price paid by him to Williams & Duhring for their interest in the lot. The judgment below in effect

makes the widow pay a part of the defendant's debt, and gives him the land for less than he contracted to pay.

Mr. *Shepley* made the following points, among others : 1. That portion of the finding which states that the lot was purchased " as a mere investment; with the view and intention of ultimately keeping the same," is not warranted by the evidence. 2. The lot, from the time of its purchase from Bouju, was partnership property. (*Lancaster Bank* v. *Myley*, 13 Penn. State Rep. 544. *Hoxie* v. *Carr*, 1 Sumner, 173. *Dyer* v. *Clark*, 5 Metcalf, 579; 581. *Boyers* v. *Elliott*, 7 Humph. 204. *Pugh* v. *Currie*, 5 Ala. 446. *Pierce* v. *Trigg*, 10 Leigh, 406. *Edgar* v. *Donnely*, 2 Mun. 387. *Smith* v. *Ramsay*, 1 Gil. 373. Walker's Ch. Rep. 200. *Sigourny* v. *Munn*, 7 Conn. 11. 3 Howard (Miss.) 372. 5 Ala. Rep. 446. 1 Dev. & Batt. 510. Parsons on Contracts, p. 125. 3 Kent's Comm. (6th ed.) 37, and note at p. 39.) 3. Partnership real estate is to be treated as personal property, unless upon a dissolution of the firm and payment of all its debts, it is no longer needed for the purposes of the partnership. (5 Vesey, 189. 7 Vesey, 425. 1 Russ. & Mylne, 45. 1 Mylne & Keen, 649. 3 id. 443. 11 Simons, 491, quoted in 11 Barb. S. C. Rep. 72. *Buchan* v. *Sumner*, 2 Barb. Ch. Rep. 165. 5 Metcalf, 562. 4 id. 54. 10 Leigh, 406. 1 Dev. & Batt. Ch. 510. *Pugh* v. *Currie*, 5 Ala. 446.) 4. The wife is not dowable in partnership real estate needed for partnership purposes. (Parsons on Contracts, 128. 5 Gill, 26. *Greene* v. *Greene*, 1 Ham. 244. *Richardson* v. *Wyatt*, 2 Dess. 471. *Woodbridge* v. *Wilkins*, 3 Howard, (Miss.) 371. 4 Metcalf, 541. 5 id. 562, 582. 10 Leigh, 406.) The only case to the contrary is *Smith* v. *Jackson*, (2 Ed. Ch. Rep. 28,) and the only authority cited to sustain it is 5 Vesey, 189, which has long since been overruled in England.

RYLAND, Judge, delivered the opinion of the court.

1. It will not be necessary, in our opinion, to consider all the points and questions raised by the parties on this record. Both

parties complain of the judgment of the court below, and both bring the case here. The plaintiff alleges that the court erred in regard to the mortgage, and insists that she is entitled to dower in one undivided half of said premises, independent of the mortgage, and that she should not be required to redeem the same. She alleges that the right to set up said mortgage is barred by the statute of limitations, and that the defendant has no right to be substituted in the place of Bouju.

The defendant insists that plaintiff has not, and never had any right to dower in the lot, because it was purchased by the firm of Williams & Duhring as partnership property; was used as such; paid for, in part, by the cash of the firm, and the notes of the firm given for the balance of the consideration. There can be little doubt that the purchase was made by the firm of Williams & Duhring. They were partners, doing business as merchants in St. Louis, in 1834, and were so engaged in 1836, when they bought the lot of Bouju. The deed from Bouju to them shows the purchase by the firm. The witness, Williams, says it was a purchase by the partnership; says, " the purchase took the shape of a partnership transaction on the books of said firm. There was a property account, and this lot was entered into that account. The cash paid was entered into the cash account, and the notes given for the purchase, were entered into the books under the head of " bills payable." There were two stores on the lot; one was rented out by the firm, the other was occupied by it. He says " the lot was bought as an investment, to keep until we closed business."

The partners, Williams & Duhring, executed a mortgage, which was also signed and executed by the plaintiff, the wife of Duhring, to Bouju, to secure the payment of the balance of the purchase money, being seventeen thousand five hundred dollars. The plaintiff was a minor when this mortgage was executed by her.

The firm of Williams & Duhring being largely indebted to Henry Duhring, the defendant, sold him the lot in 1839, and

made a deed to him, which was also signed by the plaintiff and acknowledged by her. The. consideration was the sum of $24,500 — $7000 of which was then due and owing to Henry Duhring, by the firm; and he agreed to pay off the debt due under the mortgage to Bouju. The firm never paid any more of the original purchase money to Bouju than the first payment of $5000. The balance was paid by Henry Duhring. The plaintiff was a minor when she executed, with the partners, Williams & Duhring, the deed in 1839, to Henry Duhring.

The firm of Williams & Duhring became insolvent, wholly unable to pay the debts of the firm. Some of these debts still remain due and unpaid. The firm was insolvent when the deed was made to Henry Duhring in 1839.

Now is the widow entitled to dower in real estate bought by the firm, paid for with the funds of the firm, and bought for the use of the firm? If she is not, it will be useless to consider any other question in this case. I lay out of consideration the fact that there were two store houses on the lot, one of which was rented out by the firm; and the remark of the witness, that the lot was bought as an investment, to keep until the close of the concern. These, taken together, cannot warrant the court in saying it was not partnership property—was not bought for the use of the firm. It was purchased for the stand or store of the firm; and renting out a part of the real estate, not necessary for the immediate occupation of the firm, did not and cannot change the nature or design of the purchase. I will remark further, before I proceed to consider this question, that the court below was not warranted in finding " that the purchase was regarded by the parties, at the time of making the same, as a mere investment, with the view and intention of ultimately keeping the same." There is nothing preserved in the record to warrant this finding. It would be a strange conclusion that, if a mercantile firm should buy a lot for the purpose of carrying on their business as merchants in a city, some thirty or fifty feet front, running a hundred and fifty feet back, and there should happen to be a store house on the front

of the lot and an ice house in the rear, and the merchants should rent out the ice house, that their renting out the ice house should render half the lot purchased no longer partnership property.

The main question, however, must now be considered. Is the widow dowable in real estate belonging to the firm, which was purchased by the partners for partnership purposes, with partnership funds? There is no question here between heirs, personal representatives and widow. The debts of the firm would have swallowed up the partnership property here, and still demanded more.

I answer that the widow, in this case, is not entitled to dower. The real estate purchased by the partners must be considered, so far as is necessary to pay the debts of the firm, partnership stock, and liable to the rules and regulations incident to personal property.

It was held in *Thornton* v. *Dixon*, 3 Brown's Ch. Rep. 199, that real estate, used for purposes of a partnership trade, shall go to the heir, and not to the executor. This case and some others, more modern, (this case was decided in 1791,) (see *Bell* v. *Phyn*, 7 Vesey, 453. *Balmain* v. *Shore*, 9 Vesey, 500,) militate against the rule above laid down, that such estate becomes partnership stock. But the authority of these decisions has been much questioned.

The general principle now declared in the English law is, that real estate, acquired for the purpose of a trading concern, is to be considered as partnership property, and to be first applied in satisfaction of the demands of the partnership. In *Fereday* v. *Wightwick*, 1 Russell & Mylne, 45, the Master of the Rolls, Sir John Leach, said: "The general principle is, that all property acquired for the purpose of a trading concern, whether it be of a real or personal nature, is to be considered as partnership property, and is to be first applied accordingly in satisfaction of the demands of the partnership. It is true, a mining concern differs, in some particulars, from a common partnership; the shares are assignable, and the death or bank-

ruptcy of the holder of shares does not operate as a dissolution; but it has been repeatedly held to be in the nature of a trading concern." In *Phillips* v. *Phillips*, 1 Mylne & Keen, 649, it was held that real estate, purchased with partnership capital, for the purposes of the joint trade, is personal estate, and in respect of the share of a deceased partner, retains that character, as between his real and personal representatives. The Master of the Rolls said in this case, "that, with respect to the question, whether freehold and copyhold property, purchased with the partnership capital, and conveyed to the two partners and their heirs, for the purposes of the partnership trade, is to be considered as personal estate only, for the payment of the partnership debts, or is generally to be considered to the extent of a moiety, as personal estate of a deceased partner. I confess I have, for some years, notwithstanding older authorities, considered it to be settled that all property, whatever might be its nature, purchased with partnership capital for the purposes of partnership trade, continued to be partnership capital, and to have, to every intent, the quality of personal estate. In the case of *Fereday* v. *Wightwick*, 1 Russ. & Myl. 45, I had no intention to confine the principle to the payment of the partnership demands. Lord Eldon has certainly, upon several occasions, expressed such an opinion, and general convenience requires that this principle should be adhered to." This case was decided in 1832. It was held in *Broom* v. *Broom*, 3 Mylne & Keen, 443, decided in 1834, that real estate, purchased with partnership capital, and applied to the purposes of the trade, was, in a court of equity, to be considered as personalty, and that, therefore, the infant heir of a deceased partner, upon whom the estate had descended, was a trustee for the widow and administratrix of the deceased partner. Professor Parsons, in his treatise on contracts, (chap. 12, sec. 2,) says: "All kinds of property may be held in partnership; but real estate is still subject, to a certain extent, to the rules which govern that kind of property. There is some conflict and perhaps uncertainty as to the rights and remedies

of partners and creditors in respect to real property which belongs to the partnership, both in England and in this country. But we consider the prevailing and just rule to be, that when real estate is purchased with partnership funds, for partnership purposes, it will be treated as partnership property, and *held* like personal property, chargeable with the debts of the firm, and with any balance which may be due from one partner to another, upon the winding up of the affairs of the firm. But it seems to be the prevailing rule in this country that, as between the personal representative and the heirs of a deceased partner, his share of the surplus of the real estate of the partnership, after all its debts are paid, and the equitable claims of its members are adjusted, will be considered and treated as real estate." He continues : " It has been held that the real estate of a partnership does not acquire the incidents or liabilities of personal estate, unless there be an agreement of the partners to that effect, and that then this change in the legal nature of the property results from this agreement ; but we doubt the accuracy of this ruling." For this last doctrine, making an agreement necessary to change the nature of the partnership real property to personal, the author cites *Coles* v. *Coles,* 15 John. Rep. 159 ; the case from Brown's Ch. Rep. of *Thompson* v. *Dixon ; Bell* v. *Phyn; Balmain* v. *Shore,* above cited by me in this opinion, and the case of *Smith* v. *Jackson,* 2 Edwards Ch. Rep. 28. This last case is the principal authority on which the plaintiff relies. But, with Professor Parsons, I greatly doubt the accuracy of the ruling in that case. Parsons says, " the widow has her dower in the estate after the debts are paid, but not until then." See p. 128, Treatise on Contracts.

In *Hoxie* v. *Carr,* 1 Sumner, 183, Justice Story said : " A question often arises whether real estate, purchased for a partnership, is to be deemed, for all purposes, personal estate, like other effects. That it is so as to the payment of the partnership debts, and the adjustment of partnership rights, and winding up the partnership concerns, is clear, at least in view of a

court of equity." Again, in the same case, he said : " The question here is not whether real estate, when it is partnership property, becomes, to all intents and purposes, in cases of intestacy and wills, personalty ; but whether it is to be so treated in equity, as between the partners themselves and the creditors of the partnership. It seems to be the established doctrine of courts of equity, that it is to be treated as personalty, as between the partners and their creditors, in whose name soever it may stand on the face of the conveyance." The Court of Appeals of Maryland, in the case of *Goodburn and wife* v. *Stevens et al.*, 5 Gill's Rep. 28, says : " The doctrine that real estate, purchased with partnership funds, for its use and on its account, is to be regarded in a court of equity as the personal estate of the partnership, for all the purposes thereof, stands upon a familiar and just principle. It is the clear case of an implied or constructive trust, resulting from the relation which partners bear to each other, and from the fact that the estate was brought into the firm, or purchased with the funds of the partnership, for the convenience and accommodation of the trade. For this reason, in whose name soever the legal title may reside, the estate is held, in the eye of a court of equity, for the use of the partners as the *cestui que trust*, and if a partner dies, the legal estate, of which he was seized as a tenant in common, passes to his heirs or devisees, clothed with a similar trust in favor of surviving partners, until the purposes for which it was acquired have been accomplished."

Chanceller Kent, (3 Com. 37,) says : " If partnership capital be invested in land for the benefit of the company, though it may be a joint tenancy at law, yet equity will hold it to be a tenancy in common, and as forming a part of the partnership fund ; and the better opinion would seem to be, that equity will consider the person in whom the legal estate is vested, as trustee for the whole concern, and the property will be entitled to be distributed as personal estate. In the case of *Sigourney* v. *Munn*, (7 Conn. Rep. 11,) the English and American authorities were fully examined, and the subject discussed, and

the doctrine declared, that real estate purchased with partner-
ship funds, for partnership purposes, would be regarded in
equity as partnership stock, and liable to all the incidents of
partnership property. It was also declared that it might,
by agreement of the parties, be regarded as personal stock.
Chancellor Kent, in a note on page 38 of the third volume of
his Commentaries on this subject, quotes the remark of Chief
Justice Shaw, in *Burnside* v. *Merrick*, 4 Metcalf, 541, that
the prevailing judicial opinion now is, that real estate, purchased
by partners, with partnership funds, for partnership purposes,
though at law it may be held by them as tenants in common,
yet, in equity, it is considered as held in trust as part of the
partnership property, applicable, in the first place, exclusively
to pay the partnership debts." After citing *Dyer* v. *Clark*,
and *Howard* v. *Priester*, (5 Met. 562, 582,) and *Divine* v.
*Mitchum*, (4 Ben. Monroe, 488,) he says : "The prevalence
and correctness of this doctrine appear to be incontestable."
The Vice Chancellor in New York, in *Smith* v. *Jackson*, (2
Edwards' Rep. 28,) already cited in this opinion, after review-
ing all the conflicting cases on the point, follows the Supreme
Court of New York, and holds that, though real estate be pur-
chased with joint funds, for partnership purposes, there is no
survivorship as to the real estate, and the share of a deceased
partner, as a tenant in common, descends to his heirs, unless
there be an agreement among the partners that the lands so
purchased shall be considered as personal property ; and that
then, upon the foot of that agreement, and not without it,
equity would apply the lands to pay partnership debts. Nay,
he gives the wife her dower in the partnership share of the
husband so descended. "The decisions maintaining this doc-
trine appear to me," says the author, "to be a sacrifice of a
principle of policy, and, above all, of a principle of justice, to
a technical rule of doubtful authority. There is no need of
any other agreement, than what the law will necessarily imply
from the fact of an investment of partnership funds by the
firm in real estate for partnership purposes. If the partners

mean to deal honestly, they cannot have any other intention than. the appropriation of the investment, if wanted, to pay the partnership debts."

In *Richardson* v. *Wyatt*, (2 Dessaus. 471,) the widow of a deceased partner, in South Carolina, was denied her dower in lands purchased with partnership funds and held in the names of all the partners. In *Pierce* v. *Trigg*, (10 Leigh, 406,) Judge Tucker, in pronouncing the opinion of the court, laid down the doctrine, that lands purchased by partners, with partnership funds, for partnership purposes, and used as a part of the stock in trade, are to be regarded in equity as partnership property, and though, if the conveyance has been made to both partners, there will, upon the death of one, pass to his heirs a legal title, yet the whole beneficial interest devolves upon the survivor, and he may sue the heirs, compel a sale, and dispose of the proceeds as he would of the personal estate of the firm. I know that there have been some decisions to the contrary, which gave the wife dower to land, but from a very general and careful review of the various decisions, from that of *Thornton* v. *Dixon*, down to the present time, I come to the conclusion, that the policy of the law and principles of justice are against the right of the wife to dower in such lands, where they are necessary to pay the demands of the firm, and the weight of authority, both English and American, is decidedly against such right.

I could have contented myself with reference to the views of this court, lately expressed in the case of *Carlisle's Adm'r* v. *Mulhern & Keyser*, (19 Mo. Rep. 56.) The principles of that decision mainly settle this case.

The court below having declared the plaintiff, as widow of Andrew Duhring, entitled to dower in one half of the lot, upon certain terms, its decision upon the facts found is erroneous, and its judgment is reversed, with the concurrence of the other judges.