# CHARLESTON.

## DAWKINS *v.* DAWKINS.

Submitted June 12, 1912. Decided October 7, 1913.

1. SUFFICIENCY OF PLEADING—*Divorce.*
   *Quaere:*—In a suit for divorce does good pleading require that the bill should set forth the specific facts relied on as showing the grounds for divorce? (p. 791).

2. DIVORCE—*Desertion—Justification.*
   The conduct of one spouse which will justify the other in leaving and breaking off the matrimonial relations must be of

such a nature as to be inconsistent with such matrimonial relations or render cohabitation unsafe. (p. 792).

3. SAME—*Proof Required.*

To justify a divorce from the bonds of matrimony the evidence of the facts showing grounds of divorce must be clear and convincing, else divorce should be denied. (p. 792).

Appeal from Circuit Court, Wood County.

Suit by J. W. Dawkins against Lucy N. Dawkins, for divorce. From decree for defendant, plaintiff appeals.

*Affirmed.*

*R. E. Bills,* for appellant.

MILLER, JUDGE:

Plaintiff, a man then about thirty-five years of age, who had never been married, and defendant, a widow, about fifty-five years old, with three children, were married in June, 1902, and managed to live together until October, 1907, when separation took place by his leaving the home. This suit by him for divorce followed quite promptly after the expiration of three years from the day of separation.

Wilful desertion, adultery and cruel and inhuman treatment are charged in the bill, as grounds for divorce a vinculo, and there is some evidence tending in some slight degree to support these charges.

The offending spouse notwithstanding the grave charges against her graciously refrained from answering or making any defense to the bill, and allowed her complaining husband to have everything to his own liking, in both pleadings and proof, until on final hearing, he met foul weather, so to speak, by an adverse decision, the court below denying him any relief and dismissing his bill, wherefore his appeal.

There is no sufficient evidence to support the charge of adultery, only suspicious circumstances are shown, not amounting to proof of the fact. According to the testimony of plaintiff and his other witnesses, including two house servants, Mrs. Dawkins liked her beer, which she ordered freely on Saturday nights, and during the other days of the week is said to have "rushed the growler" frequently. The suspicious circumstances

given in evidence are that she was seen drinking beer behind closed doors with several of her boarders, and to have been in a sitting room with one of them, on one occasion, with the door closed; and on one or two occasions when joyous and happy in her cups was seen to exhibit one of her absent husband's neckties, and to ask one of her favorite boarders, how he would like to stand up with her and wear that. But nothing criminal is shown nor any facts from which, under the circumstances, criminal conduct could legally be inferred.

Desertion and cruelty are charged in the bill in the most general terms. No facts are pleaded constituting desertion or cruel and inhuman treatment. The grounds for divorce specified in the statute are rather as conclusions of law, than specifications of the facts. There is contrariety of judicial decisions as to whether good pleading does not require that the bill or complaint should set forth the specific acts and conduct constituting the ground of divorce specified in the statute, and relied on. In some states the statutes control; in others the subject of the pleadings is uncontrolled, except by general rules applicable in all cases. In 14 Cyc. 669, the text is: "The complaint should aver the existence of the facts essential to constitute desertion or abandonment, as those offenses are defined in the particular state." Citing the cases in notes. In 7 Ency. Pl. & Prac. 76, it is said: "Desertion or abandonment is usually alleged in the terms of the statute. Under the codes, however, the practice is objectionable as alleging conclusions of law, and the safest course is to allege the separation of the parties and the facts which caused it with sufficient minuteness to show that the defendant abandoned the plaintiff without reasonable cause, and remained absent for the statutory period." Citing the cases. In Virginia one recent case, *Miller* v. *Miller,* 92 Va. 196, a suit based on alleged adultery, the Virginia court held a bill bad on demurrer which simply charged adultery without stating time, place and circumstances.

But we think it unnecessary to decide this question of pleading, for treating the bill as good and justifying relief, if proven, we do not think the evidence makes out a clear and certain case for divorce.on any ground.

Plaintiff, not defendant, left the matrimonial habitation. Plaintiff in his evidence would justify his going and convert his absence into desertion by her because of conduct justifying his going. "But," says Keezer on Marriage and Divorce, section 142, "the conduct of one party to justify the other in leaving must be of such a nature as to be inconsistent with the marital relation, or to render cohabitation unsafe." In *Reynolds* v. *Reynolds,* 68 W. Va. 15, 19, denying the husband cross relief based on absence because of alleged cruel and inhuman treatment, the evidence not clearly supporting his contention, we applied this rule. And as there said, justifiable cause which will excuse a husband or wife from leaving the other must be such as could be made the foundation of a judicial proceeding for divorce *a mensa et thoro.* Citing *Alkire* v. *Alkire,* 33 W. Va. 517; *Martin* v. *Martin, Id.* 695; *Carr* v. *Carr,* 22 Grat, 168, and *Harris* v. *Harris,* 31 Grat. 13. By section 6, chapter 64, Code 1906, divorce *a mensa* is authorized for cruel and inhuman treatment or reasonable apprehension of bodily hurt. True abandonment and desertion are also grounds for such separation. But to convert the separation of one spouse for cause into desertion by the other, because of cruel and inhuman treatment or reasonable apprehension of bodily hurt, the evidence must clearly show conduct of the offending party of such a nature as to be inconsistent with marital relations, or to render cohabitation unsafe.

Outside of some alleged intemperate language towards plaintiff, the only evidence of cruel and inhuman treatment is that of the plaintiff himself, and as was said under the same circumstances, in *Tillis* v. *Tillis,* 55 W. Va. 198-9, we think "that is too short."

Referring to the time of the separation, plaintiff says, "she ordered me out of the house and told me not to come back any more, and she was so quarrelsome that I could not live with her." Asked what lead up to this separation he answered: "Every time I would go into the house or around where she was at she was all the time calling me names and quarreling with me, and hit me with a spit-toon and broke that over me, and hit me with a chair, and in fact the last two years we lived together she did not speak a pleasant word to me, and would not let me sleep in the same bed that she slept in, in fact she de-

serted me long before the month of October three years ago, on the day that we separated I went into the kitchen and found her standing in the pantry drinking beer with a man by the name of Ed Shaw and another man they called Joe I do not know his real name, when I went to the pantry door she ordered me out and called me a big bull, and told me to get out of the house and told me never to come back in it, I told her there was a man sitting at the table that wanted something to eat, and that somebody ought to wait on him, and that it was not right for her to drink beer with other men and neglect the home, she then went and got my clothing and threw it out into the front yard." · In the next answer he professes to have done nothing to cause defendant "to do as you say she did on the day you separated." Witness had not said that defendant had hit him with the spittoon and chair on the day of the separation. His previous answer was intended as a statement of what had led up to the separation. No time, place or circumstance is given for the alleged assaults. Nor does it appear how long before the separation this all occurred, nor does it appear, if made, that these assaults were not subsequently condoned or forgiven. Plaintiff is wholly uncorroborated by any witness, from a house of thirty boarders, regarding these assaults. One witness, who had been a servant in the house, swears, without reference to the particular time of the separation, that defendant was very quarrelsome and would try to pick a fuss out of him, that in 1906, while she worked there, defendant said she wished plaintiff would leave and never come back, and apparently did everything possible to annoy plaintiff and make his life miserable, and that while she was there he had to prepare his own meals. The latter fact is not mentioned by plaintiff. What was witness there for, if not to prepare meals? Witness nowhere particularizes as to what the other things were which defendant did to make plaintiff miserable and his life unbearable.

Mrs. Bessie Hill, a next door neighbor, who claims to have witnessed the final separation in October, 1907, and the only witness sworn, besides plaintiff, to that transaction, says: "Q. Did you hear what was said by these parties just before they separated? A. I heard what was said out on the porch, Mrs. Dawkins gathered up Mr. Dawkins' clothing set them out on the

porch, and cursed Mr. Dawkins, and told him to take them, leave, and never come back again, she cursed him very violently and used very bad language towards him, I did not hear much that Mr. Dawkins said, but that he was reasoning with her and told her that he had no place else to go, but she made him leave." Dawkins, himself, does not mention Mrs. Hill as a witness to the separation. He does not mention the fact that his wife swore at or cursed him on that occasion. According to his evidence quoted he really began any quarrel that ensued, and he differs from Mrs. Hill, as to what was done with his clothes. He said his wife threw his clothing into the front yard. According to Mrs. Hill she set them out on the porch.

Upon the whole record we are disposed to affirm the decree below, the evidence not being of that clear and convincing character justifying a court in dissolving the marriage bonds.

*Affirmed.*