## CONRAD O. BAILEY v. MRS. MABLE JOHNSON BAILEY.

Western Section.   November 25, 1927.

No petition for Certiorari was filed.

1. **Divorce. Evidence. Evidence that witness thought that defendant would like to go back to her husband, held opinion evidence and inadmissible.**
   In a divorce action where one witness testified that she believed that the wife would like to go back to her husband, held that the evidence was purely a matter of opinion and was inadmissible.

2. **Divorce. Husband is not required to solicit the return of a wife who has wilfully deserted him.**
   The general rule is that one spouse is not justified in leaving the other unless the conduct of the offending spouse is such as would in itself constitute a ground for divorce and where one spouse wilfully deserted the other it is not incumbent upon him to solicit a reconciliation.

3. **Divorce. Desertion as a ground for divorce.**
   Before a wife can justify her desertion of her husband she must show that he was guilty of such misconduct as to render it impossible to continue the matrimonial cohabitation with safety, health and self respect.

4. **Divorce. Evidence. Evidence held insufficient to constitute ground for divorce.**
   The evidence examined and held insufficient to show that the conduct of the husband would render it impossible for the wife to continue the matrimonial cohabitation with safety, health and respect, and hence her desertion of her husband was not justified.

5. **Divorce. It is not necessary for the husband to prove malice in an action for divorce because of desertion.**
   It is not necessary that a complainant seeking a divorce on the grounds of wilful or malicious desertion for two whole years, shall prove malice. It is

sufficient that the complainant prove that the alleged desertion was wilful, and continued for a period of two whole years.

6. **Divorce. Alimony. Alimony may be made the subject of an agreement between the parties.**
It is well settled that the matter of alimony may be made the subject of an agreement between the parties where it does not appear that the alimony agreement is made to induce the defendant from contesting the divorce suit.

Appeal from Chancery Court, Shelby County; Hon. M. C. Ketchum, Chancellor.

Reversed.

L. D. Bejach, of Memphis, for appellant.

Lee & Featherstone, of Memphis, for appellee.

SENTER, J. Appellant filed his original bill in the chancery court of Shelby county, Tennessee, against the defendant seeking an absolute divorce. The bill alleged that the defendant had been guilty of willful, malicious desertion and absence without a reasonable cause for more than two whole years before the filing of the bill.

The defendant filed an answer and cross-bill, in which she denied the material allegations in the bill, and denied that she had willfully or maliciously deserted the defendant without reasonable cause. By way of cross-bill she alleges that the cross-defendant had been guilty of cruel and inhuman treatment so as to render it unsafe and improper for her to cohabit with him and be under his dominion and control. She sets out in the cross-bill, and details the acts and conduct of the defendant in the cross-bill, and his treatment of her, and upon which she bases the charge of cruel and inhuman treatment entitling her to a divorce, and also attorney's fees and alimony permanent and pendente lite. The cross-defendant filed an answer to the cross-bill in which he denied the material allegations of the cross-bill.

On January 29, 1927, there was a consent decree entered in the cause, after the same had first been submitted to the Chancellor and approved by the Chancellor fixing the amount of alimony, permanent and pendente lite, and attorney's fees, the alimony being fixed at $1500 and solicitors fees at $200.

When the cause came on to be heard on June 1, 1927, the Chancellor dismissed the original bill, and also the cross-bill, and taxed original complainant (appellant) with the costs. From this decree original complainant prayed and was granted an appeal to this court, which appeal has been duly perfected, and errors assigned.

By the several assignments of error it is insisted; First, that the Chancellor erred in refusing to enter a decree in favor of complainant and against the defendant for an absolute divorce. Second, that the Chancellor erred in holding that in order to maintain his bill

for divorce, it was necessary for complainant to establish malice on the part of the defendant. Third, the Chancellor erred in holding that it was necessary for complainant to show an effort to effect a reconciliation, or induce defendant to return to him after the separation. Fourth, that the Chancellor erred in refusing to exclude, on motion of complainant, the testimony of Mrs. S. C. Bassett, "but I have always thought she loved him and that she would have gone back if she had a chance." This evidence being excepted to at the time offered.

The Chancellor did not file a finding of facts with the record, but the final decree recites that the court finds that the cross-complainant had abandoned the cross-bill, and that the allegations of the original bill are not sustained by the proof. However, in the bill of exceptions it appears that after the complainant had put on his proof, several witnesses having testified, including the complainant, and the complainant had rested his case upon the evidence offered, the Chancellor stated that he was not satisfied, and desired that the divorce proctor subpoena the defendant, Mrs. Mable Johnson Bailey, to appear at a subsequent date to testify, and continued the case to a subsequent date, at which time the defendant, Mrs. Bailey, appeared and testified in the case. It also appears from the bill of exceptions that the Chancellor stated, "He was not satisfied with the showing made by the complainant's proof because it did not seem to him that the desertion by the defendant had any elements of malice, and that the proof should make out a case of willful and malicious desertion." The Chancellor further said "that there was no evidence in the record of any effort by the complainant to effect a reconciliation or induce the defendant to return to him after the separation and that it appeared from the testimony of Mrs. Bassett that she believed Mrs. Mable Bailey would be willing to return to the doctor."

It also appears from the record that when the case was called for trial, the defendant and cross-complainant, Mrs. Bailey, was not present, and it was announced that she would not be present, the Chancellor made the statement that the $1500 previously decreed as permanent alimony had satisfied her, and in substance, that it looked. to him as if complainant had purchased for $1500 the defendant's acquiescence to his obtaining a divorce decree. This appears in the bill of exceptions. To this statement, complainant's solicitor replied that no such agreement had been made, and called to the attention of the court that the decree for alimony had been regularly entered in the cause and had been duly approved by the Chancellor.

It also appears from the bill of exceptions that at the conclusion of all the evidence, and after Mrs. Bailey had been brought into court and had testified, the Chancellor asked the divorce proctor for his opinion about the case, and the divorce proctor replied that he thought

Dr. Bailey had made out a case and that he was entitled to a decree for a divorce, and the divorce proctor further stated that if the charges contained in the cross-bill were true, they would not, in his opinion, constitute grounds for a divorce, or grounds that justified Mrs. Bailey's separation. The Chancellor stated that he did not agree with the divorce proctor, and stated that he did not believe that the desertion had been willful and malicious and without reasonable cause. These matters are all set out in the bill of exceptions.

Four witnesses testified in behalf of complainant, including the complainant, Mrs. Sarah D. Bailey, the mother of the complainant; Mrs. S. C. Bassett, and Mrs. John C. Ballew. From this evidence it appears that the parties were married on November 23, 1923. The complainant testified that previous to the final separation, about May, 1924, the defendant, after a quarrel between her and his mother, left his home, and remained away several days; that he went to see her, and she agreed to and did return, and continued to live with him until November, 1924, when she again left without any cause and had remained away from him ever since, except that she did return a day or two later for her clothes, and that she never communicated with him in any way since. He denied the allegations of the cross-bill to the effect that he had been unkind to her, or that he had required her to work and do the housekeeping when she was physically unable, or that he had cursed her. He admitted that when Mrs. Bailey asked him if he was going to take her to a party which her mother was giving at her home in Memphis, Tennessee, and after there had been some discussion between them relative to the party, and when she insisted upon a final statement from him, that he said "You are damned right, I am not going to take you." He stated that while he used the language quoted, and said it with firmness and decision, he was not angry, and used no other harsh language, and that he had never at any time used any stronger language to her during the time they were married. This seems to have occurred on Friday morning. He stated that on Sunday she went to her mother's home with her brother, and on the following Tuesday returned for her clothes, which she took with her and that thereafter she had never returned to his home nor communicated with him in any way. He also stated that he had always supported Mrs. Bailey to the best of his ability, that he had not refused to employ servants, but on the contrary, the discontinuance of the employment of a servant was at the suggestion of Mrs. Bailey; that prior to that time he had a colored girl, but that after Mrs. Bailey had had an operation, she discharged this colored servant herself. He stated that his mother had always made her home with him, and continued to do so after his marriage to the defendant. He stated that while Mrs. Bailey was ill and unable to perform household duties, he had a niece

there looking after the house. He denied that he had ever told Mrs. Bailey that she would have to get out and make her own living, and stated that he had supported her in keeping with his means and their station in life as long as she lived with him. He denied that he had neglected the defendant at the time she had an operation performed at a hospital in Memphis, but on the contrary the operation was performed by a physician of her own choice, and that he gave her the best possible attention, and called to see her at the hospital every day.

Mrs. Sarah D. Bailey, mother of complainant, testified in substance that she was living with her son, Dr. Conrad O. Bailey, when he married; that she was glad to have him marry, and welcomed his wife to the home. She stated that she and Mrs. Mable Bailey got along very well, but that both of them had high tempers. She stated that in May, 1924, Mrs. Mable Bailey left Dr. Bailey the first time, following a quarrel occasioned by some reference she had made to Dr. Bailey and his wife remaining out late, and that the quarrel grew out of this incident, and that the defendant then left complainant, giving as her reason that it was on account of the quarrel referred to. She stated that Dr. Bailey had at all times been kind to and considerate of the defendant, and treated her well, and provided for her well. Her evidence is in narrative form, and the narrative as testified to by her continues in the following language: "She said that in November, after Mrs. Mable Bailey had had a quarrel on account of Dr. Bailey's refusal to take Mrs. Bailey to a party at the home of the mother of Mrs. Mable Bailey, Mrs. Mable Bailey had made the statement, 'I'm going to ruin him.' She said to Mrs. Mable Bailey 'What do you mean? If you are talking about a separation, it is a pretty serious matter. You know you have tried that once, and it may not turn out the same way next time.' That between Friday and the Sunday of the separation, Mrs. Mable Bailey discussed the matter with her several times, but that she did not report it to her son, Dr. Bailey, and did not know until Sunday afternoon that she was really going to leave. That on this Sunday afternoon, Mrs. Mable Bailey came into the home with her brother and after some conversation, most of which she (Mrs. Sarah Bailey) did not hear, Mrs. Mable Bailey said to her brother, 'Must I leave?' She said that after some discussion, between Mrs. Mable Bailey and her brother, which she did not hear, Mrs. Bailey said, 'I am going, and I will come back for my things in a few days.' That on this occasion Mrs. Mable Bailey took only a hand bag with some of her clothes, and that on the following Tuesday morning she came back and got the rest of her things, and that she had never been back to the home of Dr. Bailey since November, 1924."

Mrs. S. C. Bassett, a witness for complainant, testified that she was a neighbor of Dr. Bailey living diagonally across the street from his

home; that she had lived there all the time that Dr. and Mrs. Bailey had been married; that she never saw or knew anything in the Bailey home to indicate that Dr. and Mrs. Bailey were not getting along well together; that Dr. Bailey maintained his home and provided for his wife, so far as she could tell, in an adequate and proper manner, and that Mrs. Bailey was not overworked. She stated that she knew that Mrs. Bailey had left Dr. Bailey in May, 1924, and that she had returned to him a few days thereafter. She stated that she saw Mrs. Bailey when she drove off with her clothes in November and that she had never been back to Dr. Bailey's home since that time. She stated that Mrs. Mable Bailey and her daughter were good friends, and that Mrs. Bailey had, on several occasions visited her home. She stated that a day or two after Christmas in 1926, or during the early part of January, 1927, that Mrs. Bailey was visiting her daughter in her home, and that during the visit, Mrs. Mable Bailey told her that she had, at the suggestion of her brother, consulted a lawyer about getting a divorce from Dr. Bailey, but that the lawyer had not given her any encouragement and that she also stated that she left Dr. Bailey because she got mad with him, and said that she never expected to go back to him and that she didn't want anything that he had, but that if a divorce was obtained, he would have to get it. In reply to a question from the Chancellor, as to whether Mrs. Mable Bailey, in making the above statement that she would never get a divorce, indicated that it was because she wanted to return to the doctor, Mrs. Bassett said: "No, she didn't say that, but I always thought she loved him and that she would have gone back if she had had a chance." This statement from the witness was objected to by complainant's solicitor, and a motion was made that it be excluded, which motion was disallowed by the court, and his action thereon is made the basis of an assignment of error.

The next and final witness for complainant, Mrs. John C. Ballew, testified that she was a neighbor of Dr. Bailey, and lived just across the street from him; that she had known Dr. Bailey for a long time, and that she lived at the same place, just across the street from the Baileys, while Dr. and Mrs. Bailey were living together; that she had frequently visited in the Bailey home, and that Dr. Bailey provided properly for his family, and that so far as she could tell Dr. and Mrs. Bailey got along well together. She stated that on Saturday before Christmas, 1926, she had seen Mrs. Mable Bailey in one of the stores in Memphis, and talked with her; that Mrs. Mable Bailey then made the statement to her "that she didn't want anything that Dr. Bailey had, and that if a divorce was ever obtained, he would have to sue for it." She further stated that Mrs. Mable Bailey said that Dr. Bailey's mother was the cause of their trouble. This was all the evidence in chief offered by the complainant. Whereupon,

the Chancellor stated that he was not satisfied with the evidence, and directed the divorce proctor to subpoena Mrs. Mable Bailey to appear at a subsequent date. On the date to which the case had been passed, Mrs. Bailey, in response to the subpoena, appeared and testified. Her solicitor of record was present, and tendered the said witness, Mrs. Mable Bailey, and requested the court to examine her, and the court in turn requested the divorce proctor to conduct the examination. Thereupon, Mrs. Mable Bailey testified in substance as follows: That she separated from Dr. Bailey in May, 1924, because his mother had said something to her that she did not like. That she later sent word to Dr. Bailey to see if a reconciliation could not be effected; that after several days Dr. Bailey came to see her and asked her when she was going home, and she said Monday. She testified that she was in delicate health and that Dr. Bailey required her to do all the housework, and kept strict account of the money she spent. She stated that when Dr. Bailey carried her to a hospital for an operation, he did not go to see her at all, and required her to go to work after the operation and before she was able to do so. She said that after her return from the hospital Dr. Bailey told her she would have to get out and go to work, and she said, "Not under your roof, Doctor." She said that he acted very ugly in refusing to take her to a party at her mother's home, and cursed her. When asked by the court why she had not prosecuted her cross-bill, she said she did not want to come into court. On cross-examination she stated that Dr. Bailey had given her a bank account and had bought her an automobile. She at first denied having had the conversation with Mrs. Bassett but later admitted that she had talked to Mrs. Bassett.

At the conclusion of her evidence Dr. Bailey, the complainant, was recalled and testified in rebuttal that he had never cursed his wife, and stated that the strongest language he had ever used was at the time she insisted on knowing what he was going to do about taking her to the party at her mother's home, and reiterated the statement made in his examination in chief, that he said "You are damned right, I am not going to." He denied that he had told Mrs. Bailey that she would have to get out and go to work. He repeated that he did not know of any real reason why Mrs. Mable Bailey should have left him, and the only reason that he could ascribe to her leaving was his refusal to take her to the party at her mother's home.

Upon these facts the Chancellor held that the complainant was not entitled to a decree for a divorce, and stated that there was no proof in the record that Mrs. Bailey had wilfully and maliciously deserted the complainant. The Chancellor also stated that Dr. Bailey had made no effort to have the defendant come back to him, and in that connection stated that Mrs. Bassett had testified that she believed that the defendant still loved the complainant and would go back to

him if she had had a chance. This evidence was excepted to as being the mere opinion of the witness. We do not think this evidence was competent. Mrs. Bassett had just stated in response to a question asked her by the court if Mrs. Bailey said anything about going back to him, that she did not, and it was in this connection that she added that she thought Mrs. Bailey would like to go back to her husband if she had a chance. It does not appear that this opinion was based upon any statement made to her by Mrs. Bailey, but was the mere expression of an opinion, or, more properly, a surmise of the witness.

We do not think there is any rule requiring the husband, who has been deserted by his wife, to solicit a reconciliation where the wife has wilfully deserted the husband without good or sufficient cause. It is clear from this record that Mrs. Bailey wilfully separated from her husband, and we think the separation was without any good, sufficient, or reasonable cause. The general rule is "that one spouse is not justified in leaving the other unless the conduct of the offending spouse is such as would in itself constitute a ground for a divorce." (19 C. J., sec. 181, p. 80.) In some jurisdictions, however, the courts have taken the view that the interests of public policy and the sacredness of the marriage tie, can be subserved by permitting one spouse to set up in defense of his or her desertion such misconduct on the part of the other as to render it impossible to continue the matrimonial cohabitation with safety, health and self-respect, although the misconduct is not in itself a sufficient ground for a divorce. 128 Md., 60, and Lyster v. Lyster, 111 Mass., 327; Stocking v. Stocking, 76 Minn., 292; Gillinwaters v. Gillinwaters, 28 Mo., 60; Neff v. Neff, 20 Mo., 182; Williams v. Williams, 130 N. Y., 193; Powell v. Powell, 29 Vt., 148; Dawkins v. Dawkins, 72 W. Va., 789.

However, under the facts of this case, such misconduct on the part of the complainant as would render it impossible to continue the matrimonial cohabitation "with safety, health and self-respect," is not shown even by the evidence of the defendant. Hence, it appears that Mrs. Bailey was not warranted or justified in leaving her husband at the time she left. The Chancellor stated that there was no evidence in the record showing or tending to show that the desertion was malicious, even though wilful, and seemed to have rested his decree on that ground. This question was before the Supreme Court in the case of McBride v. McBride, 111 Tenn., 616, and in the first headnote it is said:

"I. Divorce. Wilful 'or' malicious desertion, a ground for.

"Under the Act of 1825, chap. 26, sec. 1, and the decisions of the Supreme Court construing said Act prior to the adoption of the Code in 1858, the desertion or absence of the husband or wife for two years without reasonable cause, as a sufficient

ground for a divorce, must have been both wilful and malicious and the party must have been actuated by malice in fact; but the framers of the Code, in the matter of divorce substituted the disjunctive 'or' for the copulative conjunction 'and' found in said Act, so as to make wilful desertion without reasonable cause, for the statutory period, a sufficient ground for a divorce, regardless of the existence of malice in fact.''

Under the above holding of our Supreme Court it is not necessary that a complainant seeking a divorce on the grounds of wilful or malicious desertion for two whole years, to prove malice. It is sufficient that the complainant prove that the alleged desertion was wilful, and continued for a period of two whole years.

As above stated we do not think it is encumbent upon the complainant to show that he made any effort or endeavors to induce his wife to return and live with him. In Lanier v. Lanier, 5 Heisk., 463, 464, it was said by the court:

"It is not required that the husband shall prove endeavors to induce the wife to live with him, except in cases where she refuses to move with him to this state, as provided in section 2463.''

Nor do we think that the fact of the matter of alimony having been made the subject of an agreement between the parties can be considered or construed as amounting to collusion. The decree for alimony in the instant case was a consent decree, and was duly submitted to the court, and approved by the court, and entered in the cause at the preceding term. It is well settled that the matter of alimony may be made the subject of an agreement between the parties where it does not appear that the alimony agreement is made to induce the defendant from contesting the divorce suit. There is nothing in the record to indicate that the defendant had any agreement of any kind that she would not appear or contest the suit for divorce, or that the consent decree for alimony was entered into between the parties with any understanding or agreement with reference to the divorce suit. (19 C. J., 251, and numerous cases cited therein).

We are of the opinion that the learned Chancellor was in error in denying to complainant the relief sought, and in denying an absolute divorce under the facts of this case. We are of the opinion that the facts as disclosed by the record make out a case of wilful desertion upon the part of the defendant, without just or reasonable cause, entitling the complainant to an absolute divorce from the defendant.

It results that the decree of the Chancellor dismissing the original bill is reversed, and a decree will be entered here granting to the complainant, Conrad O. Bailey, an absolute divorce from the de-

fendant, Mrs. Mable Johnson Bailey. The costs of the cause, and this appeal, will be paid by the appellant and surety on the appeal bond. The decree for an absolute divorce is granted upon the grounds of wilful or malicious desertion, without reasonable cause, for more than two whole years.

Owen and Heiskell, JJ., concur.