11L 489
16L 286

NANNIE LIPPMAN v. J. C. BOALS et al.

MARRIAGE SETTLEMENT. *Construction.* Marriage settlements must be construed in the light of surrounding circumstances, and in view of the object and purpose of the contract; and when such settlement expresses that its object was " to secure the wife from want," an absolute right of disposition in the husband must be made to appear by express provision or *necessary* implication.

FROM TIPTON.

Appeal from the Chancery Court at Covington.    H. J. LIVINGSTON, Ch.

SIMONTON, YOUNG & BLACKWELL for complainant.

HUMES & POSTON and SMITH & LAUDERDALE for defendants.

FREEMAN, J., delivered the opinion of the court.

In 1874, complainant and Alexander Lippman, in contemplation of marriage, entered into a marriage contract, by which certain real estate, together with a number of notes and evidences of debt due to Alexander Lippman, were transferred and conveyed to Jno. W. Calhoun, of Tipton county, Tennessee.   The real estate is specifically described, and likewise the notes and evidence of debt, amount and date when due, together with the name of the parties owing said debts.

The main question in the case depends on the true construction of the contract, and grows out of the fol-

lowing alleged state of facts: The husband after the marriage, assigned a portion of the notes to a firm in Memphis, in payment of debts due by him, averred to have been contracted after the contract—at any rate, not to have been a charge in any way on these notes or property held by the husband at the date of the marriage. The defendants, purchasers, are charged to have had actual notice of the settlement, and as the notes are specifically described, were put on inquiry, at least as to these notes, and therefore took subject to the provisions of the contract. The bill having been demurred to, these facts are substantially stated and admitted.

This bill is brought by Mrs. Lippman, after the death of the husband, to have an account of the proceeds of these notes, so far as collected by the assignees, and to reach some of the evidences of debt remaining intact in Tipton county, in the form of a judgment, perhaps.

The stipulations of the contract, so far as necessary to the decision of this case, are as follows:

It is first agreed that the property should " remain at the *absolute* disposal of said Lippman *until* the solemnization of the intended marriage."

It is then added: " But this conveyance is made in trust for the following uses and purposes herein declared and set forth, and no other, that is to say, the said Calhoun, trustee, shall permit the said Lippman and wife to have and hold the undisturbed and peaceable possession, use and enjoyment of said property during their natural lives, or during the continuance of the marriage between them, without molesta-

tion or interference of any kind, and in case of the death of said Lippman, in the lifetime of the wife, or dissolution of the marriage, the said Calhoun is to convey to the wife."

The husband has died and a conveyance has been made by a successor of Calhoun, in accord with the contract.

If this were all of the terms of the contract, it might, with some plausibility be maintained, that Lipp- man, as well as the wife, had power to transfer and convey the equitable title of the property, and the as- signees to call for the legal title in the events that have happened. But there is in the introductory part of the contract, a distinct and definite statement of the primary and controlling object and purpose of this contract, to which we must look in its construction, so as to derive from the whole instrument, as well as the surrounding circumstances, what was the intent and meaning of the parties by what they have said.

That intent is thus expressed, after reciting the fact of the contemplated marriage, it is added: "And whereas, the said Alexander Lippman is desirous of securing to and settling upon said Nannie, certain property, so as to secure her against want in case of adversity, and being not involved by any debt what- ever," in consideration of the premises the property is conveyed to Calhoun, etc.

Now in view of this leading purpose, we think it clear, that the subsequent language must be understood and construed, so as to carry out and effectuate this purpose, and certainly not to defeat it.

It certainly was not intended the husband was to have and enjoy the right of absolute disposition of this property as before, for if so the contract was futile, effected nothing; certainly did not tend to "secure the wife from want."

We hold it to be, at least, reasonably certain, that the husband could not dispose of this property, except by the concurrence of the wife, freely and voluntarily given, and that is enough for this case, as it is averred, that no such consent, either of herself or trustee, was given to the disposition made.

The clause retaining the absolute control and disposition in the husband until after the marriage, implies of necessity, that after that event, the opposite of this would be the case, and that some disposition was to follow, inconsistent with this.

The fact that the property is to be conveyed on death of either party—not what remains—but the entire property, would go far to sustain the view, that no right of disposition as to the corpus, was to be exercised during the coverture at all. We need not decide how this is, however, for the disposition of this case as it stands before us.

The chancellor was correct in overruling the demurrer as to this feature of the bill. The only other question pressed on us is, it is insisted the bill is for a conversion, and the statute of limitations of three years is a bar to complainant's claim. In this the chancellor ruled correctly, holding that it was not a suit for tort, but the tort was waived, and the statute of six years was applicable to the facts of the case.

The other questions were correctly decided by the chancellor, and his decree is affirmed with costs, and the case remanded to be further proceeded in.