KILLIBREW v. KILLIBREW.—137 S. W. (2d) 953.

Eastern Section. December 5, 1939.

Petition for Certiorari denied by Supreme Court, March 2, 1940.

N. B. Hargraves and Charles C. Moore, both of Chattanooga, for appellant.

C. A. Noone, of Chattanooga, for appellee.

PORTRUM, J. This suit was instituted to enforce a marriage settlement entered into between husband and wife, in contemplation of a divorce to be granted to the wife upon a petition then pending in the courts of Georgia, and made between the parties in the city of Chattanooga, when both were represented by counsel. The Chancellor held the agreement was enforceable, from which decree the defendant has appealed. He failed to comply with the rules of this court by filing his assignments of error within the twenty-five-day period required by the rules; the appellee has filed a motion to dismiss or strike the assignments and affirm the decree of the lower court because of the failure to comply with the rules of the court, and he has filed an exhausted brief in support of his motion. The assignments were filed only five days late, and the court is always reluctant to dismiss the appeal, when no harm has arisen because of the delay, but when justice cries out for an affirmance of the decree and the defense is a technicality favoring the defendant with an unjust result, then the court is more rigid in enforcing its ruling. These issues demand a pound of flesh and the court will exact no drop of blood. We will say more upon the ruling of this motion later.

Dr. Joseph B. Killibrew, the defendant and appellant, was a surgeon practicing in the city of Chattanooga, earning approximately $10,000 per year. He and his wife lived in their home upon Lookout Mountain, located across the state line in the State of Georgia. They were both young people, and as stated in the pleadings, traveled in the fast set of high-society. They attended cocktail parties, and the purpose of some of these parties was to see who could stay above the table longest. However, the wife seemed to have confined the principal part of her drinking to these parties, while her husband did not. He imbibed habitually. His conduct brought about dissension in his marital relationship, and his wife instituted her suit in the State of Georgia for a divorce, charging habitual drunkenness. They had discussed the question of divorce between them frequently, his wife insisting upon a divorce with intention of going to New York and qualifying herself for a business career, and the husband reluctantly agreeing to the same. They also discussed the matter of a property settlement with the attorney representing the wife, Mr. Noone, and the husband thinking Mr. Noone a little partial to the wife complained, when he was advised to secure an attorney to represent him. He employed the Honorable Estes Kefauver to represent him, and the

four together, after due deliberation and much discussion, drafted and the husband and wife entered into a property settlement in lieu of any claim for alimony to be asserted in the divorce proceedings.

It appears that the wife's father had deeded her and her husband, by the entirety, the property upon which they had constructed a dwelling house and upon which they secured a mortgage loan payable in monthly installments, there remaining due at the date of the settlement, several thousand dollars. In adjusting this matter it was agreed that the wife was to have title to the property, but the husband was to retain possession of the same until the mortgage indebtedness was paid and to rent the same and apply the rent upon the mortgage indebtedness, since the rents amounted to more than the monthly installments, taxes, and insurance—the property to be rented as a furnished home. When the debt was paid the property was to be returned to the wife.

The personal property was given the wife with the exception of certain wedding presents given by the husband's friends which were listed and conceded to be his property.

The husband agreed to pay the wife the sum of $150 per month for a period of three years, and $75 per month for another period of two years, at which time alimony payments should cease. In time the wife procured her divorce and the defendant complied with the provisions of his contract for two or three years, as best he could, at one time agreeing with the wife to pay her $100 per month until he was able to pay her the balance at a later date. Mrs. Killibrew went to New York to prepare herself for a business career, and while there corresponded with her former husband, and it appears from a casual inspection of this correspondence that both were still very much in love with each other. But the husband was unable to reform and continued his drinking, as his correspondence demonstrates, and for this reason he was unable to induce his former wife to remarry him. He continued to woo her and at times they would see each other, and their relationship during the intervals of this friendship can accurately be termed as very close. The long absence between meetings cooled the husband's ardor and he married another.

After his remarriage he declined to further carry out his contract and this suit was instituted to enforce it. It is a difficult matter for the courts to equitably adjust the property rights between husband and wife when one is seeking a divorce, especially when each is making exaggerated claims as is usually the case. The parties best know how the property should be divided equitably between them and when they can agree among themselves, then the court should approve and not condemn the agreement as one against public policy, and it is only when the contract appears to be an iniquitous one upon its face, or by the proof, that the court will condemn it and refuse to enforce it.

This contract was one advantageous to the husband when viewed

as a division of property and claim as a right for alimony. He was a young surgeon earning $10,000 per year and his earning capacity would have increased had he kept himself capable to perform his professional duties. He conceded that the wife should have the real property which was given by her father, and it was improved by a mortgage debt which proved to be a self-liquidating debt because the value of the rentals exceeded the installments due upon the mortgage, taxes, and insurance. And he was required to pay alimony upon a sliding scale only for five years, at such time, as they thought, his wife would qualify herself to make herself self-supporting.

He claims now, since his remarriage, that this contract was a collusive contract made in contemplation of divorce; that it is without consideration; that it is against public policy, and that the complainant comes into court with unclean hands and should be repelled. The Chancellor decided these issues against him and he has brought the case here for a review. The contract is not without consideration, since it is recognized that the husband must support his wife during the marriage relationship and pay alimony in case she is divorced for cause, and it is not against public policy when entered into fairly and it is not an unduly burdensome contract indicating fraud, which is to say, if it be a contract the terms of which are fair, and such as the court, in making the property adjustment and alimony award would approve, then it becomes immaterial whether the parties made the agreement themselves or the court made it for them. Bailey v. Bailey, 6 Tenn. App., 272; Russell v. Russell, 3 Tenn. App., 232, 251.

The contract is collusive when it appears it was made to induce the defendant not to contest the divorce suit. Bailey v. Bailey, supra. But where the wife has just grounds for divorce and the husband has no defense, then it becomes immaterial whether he contests or does not contest the divorce from a standpoint of public policy, and collusion carries the thought of the establishment of a false ground for divorce. Under the circumstances here detailed it cannot be said that the wife comes into court, in an attempt to enforce the contract, with unclean hands and should be repelled.

The contract does recite that a divorce proceeding was pending or contemplated on the ground of habitual drunkenness, and, at the insistence of the husband, it recites that he denied the charge, and to this it is inferred that the wife acquiesced in the denial and it being a part of her contract it amounts to an admission on her part that the charge was in fact untrue. The facts are that the husband did not want to admit that he was in fact an habitual drunkard and after some contention over the wording of the contract he was permitted to put this declaration in it. The fact is clearly established, through his letters, that he was an habitual drunkard, so the recitation in the contract was but a concession to him, and not an admission on the part of the wife.

A former husband raises these issues at this late date with what effect if sustained? If the court should hold the divorce collusive, what then is the status of his present marriage relationship? And suppose he had children, would he want this cloud over them and the possibility of future litigation over their legitimacy? He is certainly guilty of laches in not asserting his claim before his remarriage, and he insists that the wife should be repelled from a court of equity because she comes with unclean hands—and for what purpose? If this defense is sustained then he is in possession of her real estate, which came through her father, under the provisions of this contract entered into between her and her husband, and she could never reclaim it, and he will pay no further monthly payments of alimony, but will escape the legal obligation placed upon him by the law of the land when he married the complainant.

Conceding that the law works such hardship, to follow the letter of the law and grant him the relief prayed, then should the court favor him and relax its rules in order that he may reap this unjust reward? To do so, the court becomes a party with the defendant and aids him in obtaining this unmoral right. The rules were admittedly not complied with, and to relax them in favor of the defendant denies to the complainant a right which is as justly hers as the defenses are the defendant's. The court will not strike down a just and equitable right to sustain a legal right. The motion to strike the assignments of error because not filed in time is sustained, and the decree of the lower court is affirmed with costs. The case is remanded to the lower court for the execution of the decree.

McAmis and Ailor, JJ., concur.