# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

BIRDIE WHITEHURST UPTON v. AMES & WEBB, INCORPO-
RATED, ET ALS.

January 19, 1942.

Record No. 2444.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*James G. Martin & Son* and *Richard B. Kellam*, for the appellant.

*William G. Maupin* and *William L. Parker*, for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This proceeding was instituted to enforce an alleged equitable assignment of the interest of a beneficiary in a life insurance policy. The bill of complaint was filed by Ames & Webb, Incorporated, Trego Stone Corporation, Southern Materials Corporation, K. C. Johnson and R. Lee Page, on

behalf of themselves and all other creditors of E. Lee Williams, deceased, against E. Virginius Williams, administrator of the estate of E. Lee Williams, deceased, Birdie Whitehurst Upton, and the Provident Mutual Life Insurance Company of Philadelphia.

The bill alleged that E. Lee Williams died on June 18, 1940, and that his son, E. Virginius Williams, promptly and duly qualified as administrator of the estate of the decedent, giving bond in the sum of $2,500, with surety, conditioned for the faithful performance of his duties; that at the time of his death, E. Lee Williams was indebted to the complainants in several sums amounting approximately to $4,300; that in addition to that amount he was indebted to various other persons and firms; that his estate was insufficient to pay his debts unless the proceeds of a policy of insurance, therein described, be recovered by or for the administrator of the estate for the benefit of his creditors; that in 1924, E. Lee Williams had taken out a policy of insurance upon his life in the sum of $10,000 with the Provident Mutual Life Insurance Company of Philadelphia, upon which, at his death, there was approximately the sum of $8,000 payable to the proper beneficiary; that the beneficiary named in the policy was Birdie Whitehurst Williams, the same person as Birdie Whitehurst Upton, who was formerly the wife of E. Lee Williams; that Birdie Whitehurst Williams, prior to the death of the intestate, for a valuable consideration promised and agreed to execute a paper, the effect whereof would be to substitute E. Lee Williams and his estate as the beneficiary in the policy; that she had not, in fact, executed the said paper although she had been requested so to do; that E. Virginius Williams, the administrator, had declined and refused to make any effort to possess himself as administrator of the proceeds of the policy or to prevent the proceeds from being paid to Mrs. Upton; and that, on the contrary, he had directed the insurance company to pay the proceeds to Mrs. Upton. The bill prayed that the insurance company be directed to pay the proceeds of the policy into the registry of the court for

the benefit of the estate of the decedent and for such disposition thereof to the creditors as the court might direct.

E. Virginius Williams, administrator, and Birdie Whitehurst Upton filed their separate answers. Each answer averred that they thought it "probable" that the assets of the estate would be sufficient to pay the debts of the intestate without the proceeds from the insurance policy; that, while they believed the estate was indebted to the plaintiffs in some amount, they did not admit either "the validity or propriety" of the claims or that the claimants had "any rights as to said insurance policy;" that although Mrs. Williams had promised to consent to a change of beneficiary, if Williams would relieve her and her son of all liability as makers or endorsers on certain notes, he had not relieved them; that Mrs. Williams had not received valuable consideration for any promise made by her; that Mrs. Upton having an insurable interest in the life of her former husband and having advanced him large amounts of money and being an endorser for him in large sums, she was entitled to the proceeds of said policy; and that the administrator had properly consented and directed that the proceeds thereof be paid to her.

The Provident Mutual Life Insurance Company appeared and deposited to the credit of the court the sum of $7,778.71, representing the amount due and payable under the policy, and was dismissed as a party to the suit.

The policy named Mrs. Williams as the sole beneficiary and provided that the beneficiary could not be changed without her consent.

The evidence was taken *ore tenus*. Upon the completion of the plaintiff's evidence, the defendants moved to strike it on the ground that the promise of Williams not to proceed with his action for divorce against his wife was not a valid consideration for the assignment of the insurance policy, and because Williams had not complied with his contract to release Mrs. Williams from liability on certain notes. The motion was overruled, and the defendants then presented their evidence.

At the conclusion of all the evidence, the trial court en-

tered its decree holding that there had been an equitable assignment of the policy of insurance, and that the estate of E. Lee Williams was entitled to the proceeds thereof for the benefit of his creditors and beneficiaries. From that decree Mrs. Upton, formerly Mrs. Williams, secured this appeal.

The assignments of error are that the plaintiffs had no right to institute this suit, and that there was no valid consideration to sustain an agreement for a change of beneficiary.

█ The former contention is made in this court for the first time. No demurrer or plea in abatement was filed. The answers merely refused to admit the "validity or propriety" of the claims against the estate and denied that the estate was entitled to the insurance money. The answer of the administrator called for strict proof of the claims. The right to maintain the suit was not challenged, and no objection was made on the part of anyone to its hearing in the trial court. It is now too late to raise that question. *Harris* v. *Shield's Ex'r*, 111 Va. 643, 69 S. E. 933; *Jeffries* v. *Antonsanti*, 142 Va. 218, 128 S. E. 510.

It is, therefore, unnecessary for us to consider whether the special circumstances of this case are sufficient to take it out of the general rule that a legatee or creditor of a decedent's estate cannot maintain a suit against the personal representative of a decedent and another who is a debtor to the estate. *Harris* v. *Shield's Ex'r, supra.*

The second contention relates principally to the sufficiency of the evidence.

The appellant, now Birdie Whitehurst Upton, was for thirty years the wife of E. Lee Williams. She separated from him in May, 1938, and in the following month brought a divorce suit against him in Norfolk, Virginia, on the grounds of adultery and cruelty.

Williams was greatly distressed at being charged with adultery. He immediately contacted his attorney and intimate friend, Earl W. White, of the city of Norfolk bar. He filed an answer stoutly denying the allegations of his wife's bill and also a cross-bill charging his wife with desertion. At the same time, he instructed White, who had known

Mrs. Williams for many years, to use his utmost endeavors to effect a reconciliation. White arranged a meeting with Mrs. Williams at the office of her attorney and used his best efforts to bring about a reconciliation between the parties. He told her that she could not prove her charges against her husband; that Williams would never submit to being divorced upon the grounds alleged in her bill; and that if a reconciliation was impossible, he intended to proceed with his cross-bill vigorously and promptly.

Mrs. Williams did not want the cross-bill prosecuted, and, according to White, it was agreed between them that if her husband would not prosecute his cross-bill, she would endorse over the insurance policy to Williams or his estate and transfer the title of an automobile, then in her name, to her husband.

The testimony on this point is somewhat conflicting. She was told to take up the matter with her counsel and to let White know later. White says that in a few days she told him it was satisfactory to her counsel. Her counsel has no memory of the matter. Mrs. Williams testified that she did agree to sign the life insurance policy and transfer the car upon the further condition that she would be released from notes, which she had endorsed for Williams, and would be allowed to secure a divorce.

White says that there was never an agreement on the part of his client or himself to permit Mrs. Williams to obtain a divorce; but that the agreement was merely that the husband would not prosecute his suit for divorce against her. Mrs. Upton agrees that her former husband wanted a reconciliation.

After the negotiations between the parties, the divorce suit remained on the docket and was never further prosecuted by either party. It is in evidence that Williams during all that time hoped for a reconciliation. While Mrs. Williams appeared anxious to secure a divorce, she did not press her suit.

In the spring of 1939, Mrs. Williams called her Norfolk attorney and asked him about the validity of a Florida di-

vorce. She left for Florida the next day before her attorney could investigate and report to her. She secured a divorce in Florida in May, 1939. Mrs. Williams said that she went to Florida for her health, and that it did not occur to her to bring the new action until after her arrival there. In the fall of that year, she married her present husband, Robert J. Upton.

After the remarriage of Mrs. Upton, Williams requested his counsel to see that his former wife carried out her agreement for a change of a beneficiary in the insurance policy.

On November 13, 1939, White wrote to Mrs. Upton as follows:

"I am enclosing you herewith change of beneficiary under policy on the life of Lee.

"I understood from Mr. Green awhile back that you would execute this notice at any time you were requested. Please sign the same before a notary public."

Not hearing from her, he wrote again on December 1, 1939, in the following language:

"I wrote you on November 13th regarding the insurance policy on the life of Lee. He carried this policy over a period of thirty days to determine if you were going to execute the change of beneficiary.

"There is a $2,000.00 loan on the policy and unless we hear from you by return mail, no further payments will be made thereon. I would at least like the courtesy of a reply."

He received from her the following letter, dated December 4, 1939:

"Your two letters received. I have been so busy that I have been unable to answer same until now. I will be glad to sign over the life insurance policy on Lee's life as per your request provided the notes signed by me as co-maker with him payable to W. Taylor Johnson and Merchants and Planters Bank of Berkeley have either been paid in full or I have been relieved from liability on said notes.

"As soon as satisfactory proof of this has been furnished me I shall be glad to sign and return paper you sent me."

In reply thereto, under date of December 12th, he wrote as follows:

"Acknowledging yours of the 4th instant, the contents of which have been carefully noted:

"I will arrange in a short while to furnish you evidence of payment of the indebtedness referred to in your letter."

White said that when he received the letter of December 4th, not knowing anything about an agreement as to the notes, he mentioned the matter to Williams, and that Williams told him the notes did not amount to much and would be paid off shortly. He also said that upon Williams' instruction, he wrote the letter of December 12th.

E. Lee Williams accordingly paid the quarterly premiums due September 12, 1939, December 12, 1939, and March 12, 1940. In June, 1940, he met a sudden death by accident.

At the time of Williams' death, the amounts due on debts, evidenced by notes formerly endorsed by Mrs. Williams or signed by her as co-maker, had been reduced to a sum aggregating only $185. This was evidenced by two notes, one for $110, held by the Merchants and Planters Bank, and one for $75, held by W. Taylor Johnson, upon neither of which did the name of Mrs. Williams appear as maker or endorser. The original notes had been curtailed and renewed from time to time without her signature.

The $110 was the balance due on an original note for $400, and the $75 was the balance due on an original note of $210. The holder of the $110 note expressly states that it took the renewal note, extending the payment of the debt, without reserving any right of recourse against Mrs. Williams. *Harris* v. *Citizens Bank & Trust Co.*, 172 Va. 111, 200 S. E. 652.

The finding of a trial court is entitled to great weight upon appeal and ought not to be reversed unless this court is satisfied that it is wrong, and the burden is on the appellant to show error and to satisfy this court of such error. *Wood* v. *Lester*, 126 Va. 169, 101 S. E. 52; *Barnard* v. *Barnard*, 132 Va. 155, 111 S. E. 227.

A careful analysis and consideration of the evidence sustain the conclusion of the learned trial court. It is, in

fact, supported and corroborated in many substantial respects by the actions and the testimony of the appellant herself. Williams strenuously opposed a separation from his wife. He endeavored to effect a reconciliation and made every effort to restore peace so that conjugal relations could be resumed. He so vigorously denied her right to a divorce that she refrained from prosecuting her suit in Virginia.

The preponderance of the evidence and the circumstances refute Mrs. Williams' statement that Williams agreed to withdraw all opposition to her divorce action in Virginia. Her subsequent action in going to Florida and bringing there a new suit for divorce is most expressive.

Neither the law nor public policy favors an agreement between husband and wife in furtherance of a divorce. On the other hand, forbearance by one spouse to bring or prosecute a meritorious suit against the other for a divorce is a valid consideration for a promise. 12 Am. Jur., Contracts, section 84. *Polson* v. *Stewart,* 167 Mass. 211, 45 N. E. 737, 57 Am. St. Rep. 452, 36 L. R. A. 771; *Duffy* v. *White,* 115 Mich. 264, 73 N. W. 363; *Adams* v. *Adams,* 91 N. Y. 381, 43 Am. Rep. 675; 60 L. R. A. page 406, *et seq.*

It would be a curious policy which would forbid a husband or wife who has filed a well-founded cross-suit for divorce from making a contract with the other spouse which would operate to prevent a severance of their marital relations.

Mrs. Upton acknowledges an agreement with her former husband in her answer in this proceeding and in her letters to White. At most, she only insisted that certain covenants, as she understood them, be performed by Williams. White, in his letters to her, made no mention of the terms of the agreement. It is significant that notwithstanding this, she promised that she would carry out her contract as soon as certain notes upon which she was co-maker or endorser "have either been paid in full or I have been relieved from liability," and "as soon as definite proof of this has been furnished me." Williams accepted these terms and, in accord therewith, paid the premiums on the insurance and otherwise reas-

onably and substantially performed his obligation. He had a right to expect that she would perform hers.

The balance due on the notes upon which Mrs. Williams was originally liable was very small, and the holders can be compensated out of the decedent's estate. Thus, that which she demanded in her letter to White will be fully accomplished.

We find no error in the decree of the trial court and it is, therefore, affirmed.

*Affirmed.*