Gloria June Houser Tarver PERKIN-SON, Plaintiff–Appellee,

v.

Franklin Dean PERKINSON, Defendant–Appellant.

Supreme Court of Tennessee, at Knoxville.

Dec. 31, 1990.

Selma Cash Paty, Paty, Rymer & Ulin, P.C., Chattanooga, for defendant-appellant.

Roger E. Jenne, Jenne, Scott & Sellers, Cleveland, for plaintiff-appellee.

## OPINION

REID, Chief Justice.

This divorce case presents an appeal by the husband from the judgment of the Court of Appeals affirming the Chancery Court of Bradley County's refusal to award him $150,000 pursuant to the terms of an antenuptial agreement. The judgment of the Court of Appeals is reversed.

The husband, 47, and the wife, 46, were married in 1986. . The trial court found the wife to be the wealthy widow of a beer distributor and the husband a not-so-wealthy pipe fitter, since retired. Prior to their marriage, they entered into an antenuptial agreement, prepared by the wife's attorney.

After eighteen months of marriage, the wife filed suit for divorce, alleging cruel and inhuman treatment. The complaint recites, "Prior to the marriage of these parties, they entered into an antenuptial agreement, disposing of their rights and interest in assets, in the event of a divorce." The husband's answer denied he was guilty of cruel and inhuman treatment but admitted the parties had entered into an antenuptial agreement. Subsequently, the husband filed a counter-complaint alleging cruel and inhuman treatment and irreconcilable differences and praying for alimony and specific performance of the antenuptial agreement.

The Chancellor granted the wife a divorce and held, erroneously as found by the Court of Appeals, that granting the wife a divorce "eliminates the question of alimony" to the husband. The Court further held that enforcement of the antenuptial agreement would be "against public policy." Enforcement of the antenuptial agreement is the only issue presented on appeal to this Court.

In affirming the trial court's refusal to enforce the antenuptial agreement, the Court of Appeals stated only, "We agree with the conclusion of the Chancellor that the Appellant was not entitled to a share of the Plaintiff's separate estate."

■ Antenuptial agreements regarding marital property do not violate public policy. Even before the enactment of T.C.A. § 36–3–501, which is not mentioned by the trial court or the Court of Appeals, the courts had declared that the public policy of Tennessee favors antenuptial agreements. The decision of *Spurlock v. Brown*, 91 Tenn. 241, 18 S.W. 868 (1892), recognized the validity of antenuptial agreements, and the Court in *Hoyt v. Hoyt*, 213 Tenn. 117, 372 S.W.2d 300, 303 (1963), stated, "Antenuptial property settlements are favored by public policy." Tennessee Code Annotated § 36–4–121(g) contains the provision, "Nothing in this section shall affect validity of an antenuptial agreement which is enforceable under § 36–3–501." Section 36–3–501 provides:

Notwithstanding any other provision of law to the contrary except as provided in § 36–3–502, any antenuptial or prenuptial agreement entered into by spouses concerning property owned by either spouse before the marriage which is the subject of such agreement shall be binding upon any court having jurisdiction over such spouses and/or such agreement if such agreement is determined in the discretion of such court that it was entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse. The terms of such agreement shall be enforceable by all remedies available for enforcement of contract terms.

■ The antenuptial agreement in this case was executed three years after the enactment of the statute codified as T.C.A. § 36–4–121, pertinent provisions of which include the following:

(a) In all actions for divorce or separate support and maintenance, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one party by the other, *equitably divide, distribute or assign the marital property between the parties* without regard to marital fault in proportions as the court deems just....

(b) For purposes of this chapter:

(1) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, ... *including income from, and any increase in value during the marriage, of property determined to be separate property* in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation.... As used in this definition, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent, or family financial manager, together with such other factors as the court having jurisdiction thereof may determine. Property shall be considered marital property as defined by this subsection for the sole purpose of dividing assets upon divorce and for no other purpose; and

(2) "Separate property" means all real and personal property owned by a spouse before marriage; property acquired in exchange for property acquired before the marriage; income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); and property acquired by a spouse at any time by gift, bequest, devise or descent.

. . . .

(g) Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties regarding the division of property. Nothing in this section shall affect validity of an antenuptial agreement which is enforceable under § 36–3–501. (Emphasis added.)

The pertinent provisions of the antenuptial agreement in this case are as follows:

## SECOND ANTENUPTIAL AGREEMENT

. . . .

### BACKGROUND FACTS

. . . .

F. The parties understand if their marriage were to end in a divorce, Tennessee is an equitable distribution state which means generally the parties [sic] marital property, which can include separate properties brought to the marriage by each spouse, will be divided approximately equally between the parties. The parties are also aware of the case of *Duncan vs. Duncan*, 652 SW2d 913, holding that provisions of an Antenuptial Agreement establishing the distribution of property if the parties divorce may be void. However, the principal asset of Tarver is the stock of Tarver Distributing Company, Inc. which is a family business in which Tarver and some of her children are active and which is subject to agreements with Anheuser–Busch which could be jeopardize [sic] by the potential for the business passing to Perkinson, the parties have made an agreement concerning distribution of their property if a divorce were to occur. The parties further understand the Tennessee law as interpreted by *Duncan vs. Duncan* is the minority position which may well be changed.

. . . .

Based on the background facts and in consideration of the parties [sic] marriage, the parties agree as follows:

1. *Agreed Distribution on Divorce.* If the parties were divorced, Perkinson agrees to accept $150,000.00 in full satisfactory [sic] of his right to any interest in the separate property which Tarver brought to the marriage. Tarver agrees she wants none of Perkinson's separate property brought to the marriage.

The recitals in the "Background Facts" portion of the antenuptial agreement reveal the circumstances that prompted the execution of the agreement: under Tennessee law interests in separate property may become marital property for the purpose of division in a divorce suit; application of that law to the parties' circumstances could result in the husband's acquiring an interest in the income and appreciation in value of the wife's separate property; and the wife's concern that acquisition by the husband of an interest in her stock in the Tarver beer distributorship could jeopardize the company's relationship with Anheuser–Busch. The purpose of the agreement clearly was to eliminate the possibility that a court might find that during the marriage the husband "substantially contributed to (the) preservation and appreciation" of the wife's separate property within the meaning of T.C.A. § 36–4–121(b)(1) and declare the income and appreciation in value to be marital property subject to division. The parties intended to accomplish their purpose by agreeing that in the event of divorce the husband would receive $150,000 in full satisfaction of his right to any interest in the income and appreciation in value of the wife's separate property. The parties' reference in the agreement to *Duncan v. Duncan,* 652 S.W.2d 913 (Tenn.App. 1983), is indicative of their intent. In that case the Court of Appeals affirmed an award to the wife representing a portion of the "assets accumulated through the joint efforts of the parties during the period of the marriage." *Id.* at 915. The Court of Appeals also recognized the right of parties to contract regarding the appreciation during marriage of separate property. The Court stated:

In making his award, the Chancellor did not consider the Defendant's personal assets, or income and appreciation on those assets since the Defendant retains sole and exclusive ownership of these assets *under the terms of the antenuptial agreement.* Assets accumulated during the marriage through the joint efforts of both parties are not covered by the antenuptial agreement and, therefore, should be divided in a fair and equitable way as we believe the Chancellor has done (emphasis added).

*Id.*

The record shows that the contract in the case before the Court was intended to apply to the appreciation in value of the wife's separate property.

■ There is no showing that the agreement was not entered into "freely, knowledgeably and in good-faith and without exertion of duress or undue influence," which are, under the statute, the only conditions on which an antenuptial agreement regarding marital property can be held invalid. The Chancellor apparently found that enforcement of the agreement whereby the husband would receive $150,000 would be somehow unfair. He stated, "The [wife's] stock might have appreciated in value some, but it is doubtful if there was great appreciation during the eighteen months they were living together." The length of time that the marriage lasted is not relevant to the fairness of the agreement. The circumstances which existed at the time the agreement was executed determine if it violates any condition of the statute. The marriage was expected to last many years, during which time the stock valued at $4,800,000 at marriage could have appreciated such that $150,000 would be an insignificant amount. In any event, the wife deemed reasonable the payment of $150,000 from her separate property in order to maintain complete ownership of the Tarver corporation in the event the marriage should end by divorce.

■ The trial court found the husband to be at fault and awarded the wife the divorce. However, enforcement of the

agreement cannot be denied because of marital fault. Tennessee Code Annotated § 36–4–121(a) provides that marital property shall be equitably divided "without regard to marital fault." It follows that valid antenuptial agreements relating to marital property, or separate property an interest in which may become marital property, will be enforced without regard to marital fault.

The purpose for which the agreement was executed is clearly stated. That purpose is lawful. The parties freely, knowledgeably, in good-faith and without exertion of duress or undue influence by either determined the terms of the agreement. The agreement is enforceable.

The judgments of the Court of Appeals and the trial court as to the issue presented on this appeal are reversed, and the case is remanded for entry of a judgment consistent with this opinion. Costs are to be borne by the appellee.

DROWOTA, O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.

### OPINION ON PETITION FOR REHEARING

The Appellee has filed a timely petition for rehearing in the above cause. Upon consideration of the same, the Court is of the opinion that the petition for rehearing is without merit and should be denied.

The petition for rehearing is denied at the cost of the Appellee.