JIMMY E. SMITH,                          )
                                         )
          Plaintiff/Appellee,            )
                                         )    Warren County General Sessions
                                         )    Case No. 6212
VS.                                      )
                                         )    Appeal No.
                                         )    01A01-9602-GS-00074
CONNIE SUE ARGO SMITH,                   )
                                         )
          Defendant/Appellant.           )

FILED

October 4, 1996

Cecil W. Crowson
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE

## MIDDLE SECTION AT NASHVILLE

## APPEAL FROM THE WARREN COUNTY

## GENERAL SESSIONS COURT OF MCMINNVILLE, TENNESSEE

## HONORABLE RICHARD MCGREGOR, JUDGE

LARRY B. STANLEY
Stanley & Bratcher
P.O. Box 568
McMinnville, Tennessee 37110
ATTORNEY FOR PLAINTIFF/APPELLEE

BERNARD SMITH
BPR #2609
P.O. Box 490
McMinnville, Tennessee 37110
ATTORNEY FOR DEFENDANT/APPELLANT

THOMAS F. BLOOM
BPR No. 11950
500 Church Street, 5th Fl.
Nashville, Tennessee 37219
ATTORNEY FOR DEFENDANT/APPELLANT

## MODIFIED, AFFIRMED AND REMANDED.

                              HENRY F. TODD
                              PRESIDING JUDGE, MIDDLE SECTION
CONCUR:
BEN H. CANTRELL, JUDGE

CONCURRING IN PART AND
DISSENTING IN PART
WILLIAM C. KOCH, JR., JUDGE

| JIMMY E. SMITH, | ) | |
|---|---|---|
| | ) | |
| Counter Defendant/Appellee, | ) | |
| | ) | **Warren County General Sessions** |
| | ) | **No. 6212** |
| VS. | ) | |
| | ) | **Appeal No.** |
| | ) | **01A01-9604-CV-00160** |
| CONNIE SUE ARGO SMITH, | ) | |
| | ) | |
| Counter Plaintiff/Appellant. | ) | |

# O P I N I O N

The counter-plaintiff, Connie Argo Smith, appeals from the Trial Court's judgment awarding her a divorce on grounds of cruel and inhuman treatment. The Trial Court also awarded her the marital residence and contents, a 1990 Astro Mini Van, and $100,000.00 cash. The Trial Court required the counter-defendant, Jimmy E. Smith, to pay all marital debts including the mortgage on the home. The court also awarded Mr. Smith a farm, commercial property, the "Smart Station" property, a houseboat, a bass boat, a Chevrolet truck, Mercedes automobile, riding mower, tractor, personal effects and unspecified stocks.

The appellant-wife presents the following issues for review:

> I.  Whether the Trial Court abused its discretion in failing to award alimony in Futuro, or a mixed In Futuro/Rehabilitative Alimony Award, and attorney's fees to the wife who was the financially-disadvantaged, innocent spouse in the divorce.

> II.  Whether the Trial Court erred in enforcing the "Reconciliation" contract which purported to exclude the husband's interest in his corporation from any claims of the wife in the event of divorce in return for the wife receiving an interest in the martial home.

> III.  Whether the Trial Court abused its discretion in failing to credit the wife with the value of her inheritance in the division of property.

> IV.  Whether the wife should be awarded her attorney's fees incurred in this appeal.

The parties were married on May 19, 1984, at which time the husband was 36 and was engaged in the operation of a corporation, National Sheet Metal Company, in which he owned a 1/3 interest. The wife was 46 and self-employed as an independent dental laboratory technician. No children were born to the union.

During the marriage, the wife's laboratory work ceased, and she became a full time homemaker for the husband, his son, grandchildren, and invalid father. She also managed the husband's rental property. The husband's business prospered and the parties accumulated a substantial marital estate.

On April 23, 1993, the parties executed a document reading as follows:

## CONTRACT

This contract is made by and between JIMMY E. SMITH AND CONNIE SMITH, hereinafter referred to as JIMMY and CONNIE. The parties are married, have had some difficulties, but are attempting to make their marriage successful. As a part of this attempt, the parties are in the process of agreeing upon property rights in the event of death or divorce. This negotiation is not complete, but the parties have reached a partial agreement which they desire to reduce to writing and make absolutely binding. The promises contained herein are made in consideration one of the other, and it is agreed that in the event of a divorce, Jimmy's interest in National Sheet Metal Machines, Inc. shall not be affected in any way, or even considered by the parties or by the court in the division of marital assets. It is further agreed that if Jimmy should die while the parties are married, Connie will have a life estate for the remainder of her natural life in and to the house and lot at 109 North Hills Drive, remainder to the children, Jeff and Gail. In the event of divorce, she shall receive a one-half interest in the equity in the house and lot. In the event of Jimmy's death, at any time thereafter if Connie desires to sell the house, Jeff and Gail must consent to the sale and the proceeds shall be divided among the three equally.

It is understood and agreed that the above provisions do not attempt to make a complete adjustment of property rights, but these provisions are of great importance to both parties and may be enforced by any court of law, equity or probate. The parties understand that the consideration or value of the above promises may be unequal, but they agree that the consideration given by each party is entirely adequate to sustain the validity of this agreement.

WITNESS our hands this the 23 day of April, 1993.

    (Signed)              (Signed)
JIMMY E. SMITH          CONNIE SMITH


On October 21, 1994, the husband filed suit for divorce, alleging cruel and inhuman treatment and inappropriate martial conduct without specifics, and without reference to the above contract.


The wife answered denying misconduct and counterclaimed for divorce, alimony and division of martital property.


The judgment is summarized above.


T.C.A. § 36-5-101(d) requires that, in making a grant of alimony, the Court shall consider all relevant factors, including the separate property of the spouse who is to receive the alimony, and the share of the martial property awarded to that spouse. It is therefore necessary that this Court consider the appellant's second and third issues regarding property before considering the first issue regarding alimony.


In respect to the Reconciliation Agreement, the Trial Judge commented orally as follows:

> THE COURT: I take this contract to mean that Mr. Smith was interested in preserving the integrity of his business; that his business would not be affected by the outcome of this divorce proceeding in any manner; that it was not to be disturbed. (1) - she didn't want to be thrown out on the street with nothing, and he did not want to have the corporation, which is made up of he and two (2) other individuals, destroyed. So, I am going to enforce this contract to the extent that National Sheet Metal Machines, Inc., will not be affected in any way. That asset will be used as part of the valuation process, but nothing in this divorce is going to affect his interest in National Sheet Metal, Inc. I am not going to require that to be sold or in any way affected, because that is what these people were trying to do at the time they entered this contract. Now, this is a reconciliation contract to try to resolve some differences. They did resolve some differences at that time. They lived together, and the divorce was filed thereafter. I think that each one of them knew enough about what they were giving up to

-4-

> make this enforceable. I think the question as to whether or not there was consideration for the contract has been met, because there were mutual promises. Each one got something; each one gave up something. Therefore, there is a consideration, and the contract will be enforceable to that extent. (Emphasis supplied)

The decree of the Trial Court does not mention the interest of the husband in his business.

The parties filed schedules required by Rule 15 of the Rules of this Court. The wife's schedule is appended hereto as exhibit A and the husband's schedule as exhibit B. The value of the husband's interest in his business is not listed on either schedule.

In this Court, the wife argues that the Trial Court erred in enforcing the reconciliation agreement. Such agreements have been recognized as enforceable in Tennessee, if entered into freely, knowledgeably, and in good faith without exertion of duress or undue influence." *Hoyt v. Hoyt*, 213 Tenn. 117; 372 S.W.2d 300 (1963); *Gilley v. Gilley*, Tenn. App. 1989, 778 S.W.2d 862, 863.

The circumstances which existed at the time of the agreement determine its enforceability under the above criteria. *Perkinson v. Perkinson*, Tenn. 1990, 802 S.W.2d 600, 603.

On September 9, 1996, in the case of *Randolph v. Randolph*, the Supreme Court invalidated an interspousal property agreement on the ground of failure to disclose material information regarding the value of property. Appeal No. 03-501-9510-CV-00119. (Tenn. Sept. 9, 1996).

The wife insists that the husband failed to disclose the value of his interest in the corporation at the time of her waiver of her rights to a share in event of divorce. This insistence and her testimony are corroborated by the testimony and actions of the husband during these divorce proceedings. The husband testified that he "had no idea" and "didn't really know" what

the corporation was worth in 1984 or 1994. An accountant hired by the wife to appraise the corporation was denied access to corporate records. The record indicates that the net worth of the corporation increased during the marriage $266,000, of which the husband's one-third share would be $88,881. However, there is no evidence that the wife contributed in any degree to the increase except as a homemaker.

This Court concludes that, if the omission of the increase in value of the corporation during the marriage was error, it did not affect the resulting judgment and was therefore not grounds of reversal or modification of the judgment.

Reverting to the Rule 15 schedules, the home, which was awarded to the wife debt-free was valued at $62,500 to $69,000.

A 41 acre farm, which was valued at $25,600 to $32,000 was awarded to the husband.

The equity of $10,100 in a commercial property was awarded to the husband.

The property occupied by the corporation is owned by the stockholders. The husband's share is one-third. Apparently, the parties do not differ greatly (only $1,000 difference) upon the value of the husband's interest therein. The husband acquired his interest in this property prior to marriage and there is no evidence that the wife contributed to its preservation or improvement. No part of this property appears to be a part of the marital estate.

The wife makes no specific complaint regarding the vehicles, water craft, household goods or stocks other than that of husband's business.

In summary, the wife received approximately $65,000 in real estate, $7,500 in vehicle, $3,000 in furniture, and $100,000 cash - a total of approximately $175,500.

The husband received approximately $28,000 in a farm, $11,000 in commercial property, $9,750 in vehicles, $62,750 in water craft, $16,300 in equipment and $4,000 in corporate stock - and the increase in the value of his interest in his business - a total of $192,000. At the conclusion of the trial, the Trial Judge made the following oral statements:

> THE COURT: Gentlemen, I have looked at all these figures. I have looked at the financial statements on the businesses; I have looked at your appraisals on the real estate and all the other pieces of personal property; I have looked at your wish list and what you want, and I have also looked at this contract. Now, as I said earlier, the business will not be affected by my ruling, because I think this agreement was to keep it out of any sale. However, I am taking into consideration the value of some of these assets. And, in the consideration of an equity adjustment and the other things, including the business, she will receive the sum of one hundred thousand dollars ($100,000) of which five thousand ($5,000) has already been paid.
>
> MR. STANLEY: How long has he got to pay that, if Your Honor please? Can he pay it over a period of years?
>
> THE COURT: No, because I am not going to grant her alimony, and she needs this money. And, if she puts this money in the bank, she can draw interest, and that will be some income.

The wife insists that her inheritance of $33,566 which she contributed to the marital estate be refunded to her. This amount became a part of the marital estate by transmutation. *Batson v. Batson*, Tenn. App. 1988, 769 S.W.2d 849, 858.

This court is satisfied that the distribution of marital estate to the wife was equitable as required by T.C.A. § 36-4-121.

Appellant's first issue complains of the failure to allow her alimony. She testified without contradiction that her needs were $2,607 per month and that her income was $213 per month. The only addition to this was the interest on the $95,000 net to be received from the husband. 6% interest on $95,000 is $475 per month. Thus, the income available to the wife receiving the $95,000 was approximately $700 per month. The wife should be allowed to reserve the principal of $95,000 for retirement and should not be required to encroach upon it

for current expenses. Considering the above earnings and interest, the wife's need for support amounted to approximately $1,900 per month.

The wife has been a licensed dental laboratory technician operating her own business which was discontinued for lack of patronage. She has also been a licensed beautician. She suffers from depression and an allergic condition which requires expensive medication. Her dental laboratory equipment has been sold to pay expenses.

The income of the husband is adequate to enable him to pay the $1,900 per month alimony needed by the wife.

T.C.A. § 36-5-101(d) provides in part:

> (d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>   (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>   (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>   (C) The duration of the marriage;
>   (D) The age and mental condition of each party;
>   (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>   (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will

be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education , training or increased earning power of the other party.

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

(2) An award of rehabilitative, temporary support and maintenance shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances. Rehabilitative support and maintenance shall terminate upon the death of the recipient. Such support and maintenance shall also terminate upon the death of the payor unless otherwise specifically stated. The recipient of the support and maintenance shall have the burden of proving that all reasonable efforts at rehabilitative have been made and have been unsuccessful.

The circumstances of this case require that support be allowed to the wife on the terms set out in the statute.

The judgment of the Trial Court is modified to require that the husband pay to the wife $1,900 per month rehabiltative alimony for a period of two years, subject to increase, decrease, termination or extension by the Court at any time upon satisfactory showing that the wife has been partially or fully rehabilitated. The court may also modify its judgment if the wife has failed to make a bona fide effort to rehabilitate her earning capacity, or if rehabilitation involves additional expenses, or if the wife has made a bona fide effort to rehabilitate her earning capacity and has been unable to do so. These modifications are to be effective on the date of the final decree, July 28, 1995.

In view of the resources of the wife the allowance of attorneys fees at the trial or appellate level is not deemed appropriate.

As modified, the judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the plaintiff-husband. The cause is remanded for entry of judgment in conformity with this opinion and for further necessary proceedings.

**MODIFIED, AFFIRMED AND REMANDED.**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION


CONCUR:


_____
BEN H. CANTRELL, JUDGE


CONCURRING IN PART AND
DISSENTING IN PART
WILLIAM C. KOCH, JR., JUDGE