IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 9, 2021 Session

**IN RE ESTATE OF LESTER STOKES**

**Appeal from the Probate Court for Madison County**
**No. 19-17950          Christy R. Little, Judge**

————————————————————

**No. W2021-00249-COA-R3-CV**

————————————————————

This case concerns the trial court's enforcement of an antenuptial agreement. Appellant and Decedent executed an antenuptial agreement five days prior to marriage. Decedent died two years later. Appellant petitioned the trial court for her elective share, exempt personal property, year's support, and homestead allowance. Appellees, beneficiaries under Decedent's will, opposed Appellant's petition arguing that she waived her spousal rights in the antenuptial agreement. Appellant argued that the antenuptial agreement was unenforceable because she did not enter into it with the required knowledge and/or she executed it under duress. In enforcing the antenuptial agreement, the trial court found that both Appellant and Decedent entered into it with the requisite knowledge of the other's holdings. On review, we conclude that Appellant lacked knowledge of the full nature, extent, and value of Decedent's holdings prior to executing the antenuptial agreement. Accordingly, we hold that the agreement is unenforceable. The trial court's order is reversed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court**
**Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Charles C. Exum and Hayden T. Cherry, Jackson, Tennessee, for the appellant, Martha Stokes.

Nathan B. Pride, Jackson, Tennessee, for the appellees, Estate of Lester Stokes, Brendi Stokes and Jeremy Stokes, Co-Executors, Jeremy Stokes, Brendi Stokes, Charleston Stokes, Brandon Stokes, Justin Gibbs, and Brittany Petway, Beneficiaries.

# OPINION

## I. Background

In December 2014, Appellant Martha Stokes and Lester Stokes ("Decedent") became engaged. The couple set their wedding date for June 17, 2017. On April 6, 2017, Decedent met with attorney Sara Barnett to discuss an antenuptial agreement. Ms. Barnett provided Decedent with two sample financial statement disclosure forms to be completed by Decedent and Appellant. Approximately two weeks before the wedding, Decedent presented Appellant with the sample disclosure forms and explained that the purpose of the forms and the antenuptial agreement was to protect their respective homes in the event of divorce. Decedent and Appellant completed the sample disclosure forms and included the following information in each of their disclosures: (1) their principal addresses;[1] (2) the estimated value of their principal residences; (3) the mortgages encumbering the residences; and (4) their respective incomes. Notably, Decedent and Appellant left the remainder of the forms blank, including the sections related to bank accounts, stocks, and pension/retirement plans. Thereafter, Decedent returned the completed forms to Ms. Barnett for preparation of an antenuptial agreement. On review of the disclosures, Ms. Barnett expressed concern that the failure to list assets other than Decedent's and Appellant's principal homes could result in the antenuptial agreement being unenforceable. Decedent responded that the principal purpose of the agreement was to protect his home in the event of divorce.

On June 12, 2017, five days before their wedding, Decedent and Appellant visited Ms. Barnett's office and executed the antenuptial agreement (the "Agreement"). The Agreement consisted of five pages of definitions and terms, including a provision titled "Release of Homestead, Dower, Year's Support, Widow's Support, Widow's Allowance and Right of Election to Take Against the Will," which provided:

> We hereby disclaim as against the estate of the other, all statutory or common law rights, including, but not limited to, all rights and claims regarding descent and distribution, homestead, dow[er], year's support, widow's allowance and right of election to take against the will of the other. We realize that by doing so we are giving up the right to take any separate property of the other upon their death and that we are familiar with the rights that we are relinquishing and that we have consulted with an attorney.

Attached as Exhibits A and B to the Agreement were financial statement disclosures, as previously completed by Decedent and Appellant. When she executed the Agreement, Appellant was not represented by counsel, and Ms. Barnett did not advise Appellant

---

[1] According to the record, in addition to his primary residence Decedent also owned a timeshare, but that was not included in the disclosure.

- 2 -

concerning her specific spousal rights or her waiver of those rights under the Agreement. Ms. Barnett advised Appellant of her right to have the Agreement reviewed by independent counsel and the importance of reading the entire document. Decedent paid Ms. Barnett for her services. Five days later, the parties married.

On August 26, 2019, Decedent died testate. After Decedent's death, Appellant discovered that Decedent owned a 401K retirement account, cash on deposit in the amount of $300,000.00, and several life insurance policies.

On October 31, 2019, Appellees Brendi Stokes and Jeremy Stokes, two of Decedent's four children from a previous marriage, filed a petition to admit the last will and testament of Lester Stokes for probate in the Probate Court for Madison County ("trial court").[2] The same day, the trial court entered an order admitting the will to probate. This order also appointed Brendi Stokes and Jeremy Stokes as co-executors of Decedent's estate.[3] Under Decedent's will, several items of personal property, along with Decedent's principal residence, were bequeathed to his children: Appellee Brandon Stokes, Appellee Jeremy Stokes, Appellee Brendi Stokes, and Appellee Charleston Stokes. Decedent also bequeathed specific pieces of jewelry to Appellees Brittney Petway and Justin Gibbs. Appellant was bequeathed a portion of Decedent's timeshare in Florida and a 2016 Nissan Altima. On February 18, 2020, an estate inventory was filed in the trial court showing the value of Decedent's estate as $293,575.00, which included Decedent's principal residence.

On May 15, 2020, Appellant filed a petition for elective share, exempt personal property, year's support, and homestead allowance in the trial court.[4] This petition is the subject of the current appeal. In the petition, Appellant requested that the trial court: (1) award her the tangible personal property located in Decedent's principal residence and Decedent's motor vehicles, not to exceed the value of $50,000.00; (2) award her a year's support in the amount not less than $99,297.00; (3) determine Decedent's net estate; (4) determine Appellant's elective share; and (5) award Appellant her homestead allowance in the amount of $5,000.00. On May 29, 2020, Appellees filed a joint answer to the petition, wherein they denied that Appellant was entitled to any claim for an elective share, exempt personal property, year's support, or homestead allowance because she waived her right to same in the Agreement. Concurrent with their answer, Appellees filed a motion to dismiss Appellant's petition arguing that she waived all rights and claims that she may have had against Decedent's estate in the Agreement. On August 3, 2020, Appellant filed her response to the motion to dismiss. In pertinent part, Appellant argued that the Agreement was unenforceable because she: (1) lacked the requisite knowledge to enter into it; and (2) executed it under duress.

---

[2] Decedent executed this will on December 18, 2017, after his marriage to Appellant.

[3] Appellant was named executrix under Decedent's will, but she declined to serve.

[4] As beneficiaries of the will, Decedent's four children, Ms. Petway, and Mr. Gibbs were named as respondents. Brendi Stokes and Jeremy Stokes were also named respondents as co-executors of Decedent's estate.

On December 10, 2020, the trial court heard Appellant's petition, and, by order of February 2, 2021, denied it. In pertinent part, the trial court found that Appellant failed to "provide to the [c]ourt clear and convincing evidence that [the Agreement] should be set aside and determined to be non[] binding." Specifically, the trial court found "that it was [the] intent of [Appellant and Decedent] to bind themselves to the . . . Agreement and to waive any [c]laim by each . . . for such benefits including, but not limited to[,] [e]lective [s]hare, [e]xempt [p]ersonal [p]roperty, [y]ears [s]upport and [h]omestead [a]llowance." Appellant appeals.

## II. Issue

The sole issue on appeal is whether the trial court erred in concluding that the Agreement was valid and enforceable.

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." *Brunswick Acceptance Co., LLC v. MEJ, LLC*, 292 S.W.3d 638, 642 (Tenn. 2008).

## IV. Analysis

### A. Enforceability of the Antenuptial Agreement

It is well-settled in Tennessee that antenuptial (or prenuptial) agreements are enforceable so long as certain prerequisites are met. *Boote v. Shivers*, 198 S.W.3d 732, 741 (Tenn. Ct. App. 2005). Tennessee Code Annotated section 36-3-501 provides that an antenuptial agreement is binding if both spouses enter into it "freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse." Tenn. Code Ann. § 36-3-501. Whether these elements exist "is a question of fact to be determined from the totality of the circumstances surrounding the negotiation and execution of the antenuptial agreement." *Boote*, 198 S.W.3d at 741 (citing *Randolph v. Randolph*, 937 S.W.2d 815, 821 (Tenn. 1996); *Cary v. Cary*, 937 S.W.2d 777, 782 (Tenn. 1996); *Perkinson v. Perkinson*, 802 S.W.2d 600, 603 (Tenn. 1990)).

Appellant first argues that she did not enter into the Agreement "knowledgeably." The Tennessee Supreme Court has articulated that the party "seeking to *enforce* an antenuptial agreement must prove, *by a preponderance of the evidence*," that the other party entered into the agreement "knowledgeably." *Randolph*, 937 S.W.2d at 821

(emphases added). In its final order, the trial court found, in pertinent part, that *Appellant* "did not provide to the [c]ourt *clear and convincing evidence* that the [Agreement] should be set aside and determined to be non[] binding." (Emphasis added). The trial court further found "that no *clear and convincing evidence* was submitted to the [c]ourt that would indicate that the [Agreement] was not entered into with full knowledge and understanding by the parties." (Emphasis added). Despite Tennessee's well-established law, the trial court placed the burden of proof on the party seeking to *invalidate* the antenuptial agreement, i.e., Appellant, rather than on the party seeking to *enforce* it, i.e., Appellees. Furthermore, the trial court applied an incorrect and heightened evidentiary standard, i.e., clear and convincing evidence, rather than the correct standard, i.e., preponderance of the evidence. This was clear error.[5] Indeed, the proper question to be answered was whether *Appellees* proved, *by a preponderance of the evidence*, that Appellant entered into the Agreement "knowledgeably." *See **Randolph***, 937 S.W.2d at 821. Generally, such error would result in our vacating the trial court's order and remanding the case for the trial court to apply the correct law and evidentiary standard. However, because the record clearly establishes that Appellant did not possess the requisite knowledge of Decedent's holdings prior to executing the Agreement—a fact that renders the Agreement *void ab initio*, *see* discussion *infra*—a remand to the trial court for reconsideration of the validity of the Agreement is unnecessary.[6]

"There are two ways to demonstrate that an antenuptial agreement was entered knowledgably." ***In re Estate of Hillis***, No. M2015-00404-COA-R3-CV, 2016 WL 761236, at *8 (Tenn. Ct. App. Feb. 25, 2016). First, the party seeking to enforce the agreement can show that the spouse seeking to avoid the agreement was provided with "a full and fair disclosure of the nature, extent and value of [the other spouse's] holdings." ***Randolph***, 937 S.W.2d at 821; *see also **In re Estate of Hillis***, 2016 WL 761236, at *8. What constitutes a "full and fair disclosure" will vary by case and depends on several factors, including "the relative sophistication of the parties, the apparent fairness or

[5] Appellees admit the trial court erred in both shifting the burden of proof to Appellant and applying the improper evidentiary standard.

[6] The facts of this case are clearly established in the record because they are enumerated in the statement of the evidence that was approved by the trial judge and filed in the trial court. According to the record, Appellant filed a statement of the evidence in the trial court on April 29, 2021. Although Appellees did not object to the statement of the evidence, on May 13, 2021, Appellees filed a "supplemental statement of facts," which we interpret as Appellees' supplemental statement of the evidence. It does not appear that Appellant objected to this supplemental statement. A statement of the evidence may be filed in lieu of a transcript if the statement conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(c). Under Tennessee Rule of Appellate Procedure 24(f), a trial judge must approve the statement of the evidence "within 30 days after the expiration of [the] period for filing objections[,] [o]therwise the . . . statement of the evidence . . . shall be deemed to have been approved and shall be so considered by the appellate court." Tenn. R. App. P. 24(f). There is no evidence in the record that the trial judge did not approve of the statement of the evidence or the "supplemental statement of facts." Accordingly, we must consider these filings, and the facts established in them, as approved by the trial judge.

unfairness of the substantive terms of the agreement, and any other circumstance unique to the litigants and their specific situation." ***Randolph***, 937 S.W.2d at 821 (citation omitted). "While disclosure need not reveal precisely every asset owned by an individual spouse, at a minimum, full and fair disclosure requires that each contracting party be given a clear idea of the nature, extent, and value of the other party's property and resources." ***Id.*** Although not required, many practitioners find it prudent "to attach a net worth schedule of assets, liabilities, and income to the [antenuptial] agreement itself" to demonstrate the requisite disclosure. ***Id.***

On appeal, Appellees allege that "Appellant had full knowledge that her husband was a man of specific means, as shown by the list of assets that was provided." It is unclear to what "list of assets" Appellees refer and to whom it was provided. We deduce that Appellees may be referencing Decedent's financial statement disclosure, discussed *supra*, that was attached as an exhibit to the Agreement. Problematically, Decedent listed only his principal residence, the mortgage amount, and his annual income in this disclosure. Notably, Decedent failed to list any information concerning his bank accounts (including life insurance cash values), cash on hand, stocks, bonds, retirement/pension plans or accounts, vehicles, or other real property. Given the limited disclosure, there can be no question that Appellant was not provided with "a full and fair disclosure of the nature, extent and value of" all of Decedent's holdings; rather, the disclosure provided Appellant with information concerning only one of Decedent's assets, i.e., his residence. ***Randolph***, 937 S.W.2d at 821; *see also **In re Estate of Hillis***, 2016 WL 761236, at *8.

Nevertheless, Appellees argue that Appellant received a "full and fair disclosure" of Decedent's holdings because Decedent's paystub was attached as an exhibit to the Agreement and showed that Decedent was contributing to a 401K account. This hardly demonstrates that Appellant was (1) aware of the value of Decedent's 401K account or, more importantly, (2) provided a "full and fair disclosure of the nature, extent and value" of Decedent's other holdings. ***Randolph***, 937 S.W.2d at 821; *see also **In re Estate of Hillis***, 2016 WL 761236, at *8. Appellees claims are disputed by Appellant's testimony that she discovered the existence of Decedent's 401K account, the amount of money held in his bank accounts, and his several life insurance policies only after his death. Appellees presented no countervailing evidence.

Appellees also assert that there is no "disclosure issue" because Appellant may not be entitled to receive certain assets (joint bank accounts and life insurance proceeds) on Decedent's death. In making this argument, Appellees misconstrue the issue. The gravamen is whether Appellant received a "full and fair disclosure of the nature, extent and value" of Decedent's holdings before she entered into the Agreement such that the Agreement is valid and enforceable; the question is not whether she is entitled to Decedent's 401K, bank accounts, or life insurance proceeds. ***Randolph***, 937 S.W.2d at 821; *see also **In re Estate of Hillis***, 2016 WL 761236, at *8. Again, Appellees have presented no evidence showing that Appellant received a full and fair disclosure. From the

record, we conclude that Appellees failed to carry their burden to show that Appellant received a "full and fair disclosure of the nature, extent and value of [Decedent's] holdings" prior to executing the Agreement. *Randolph*, 937 S.W.2d at 821; *see also In re Estate of Hillis*, 2016 WL 761236, at *8.

Nonetheless, an antenuptial agreement may be upheld even when there is not a "full and fair disclosure" of assets. Disclosure may be deemed "unnecessary" if the proponent of the agreement can show that "the spouse seeking to avoid the agreement had *independent knowledge* of the full nature, extent, and value of the proponent spouse's holdings." *Randolph*, 937 S.W.2d at 822 (emphasis added); *In re Estate of Hillis*, 2016 WL 761236, at *8. Thus, the question becomes whether Appellees proved, by a preponderance of the evidence, that Appellant obtained independent knowledge of the "full nature, extent, and value" of Decedent's holdings before entering into the Agreement. *Randolph*, 937 S.W.2d at 822. The Tennessee Supreme Court has explained that

> [s]ome factors relevant to the [independent knowledge] assessment include, but are not limited to, the parties' respective sophistication and experience in business affairs, the duration of the relationship prior to the execution of the agreement, the time of the signing of the agreement in relation to the time of the wedding, and the parties' representation by, or opportunity to consult with, independent counsel.

*Id.* at 822.

On appeal, Appellees argue that Appellant obtained independent knowledge of Decedent's holdings because the two had been together "for well over five years" at the time of Decedent's death. Appellees maintain that this was "a period of time sufficient for her to gain knowledge about the financial affairs of Decedent." As an initial matter, Appellees mistake the relevant time period at issue. It was Appellees' burden to show that Appellant possessed independent knowledge of the "full nature, extent, and value" of Decedent's holdings *when Appellant entered into the Agreement*, not at the time of Decedent's death. The record shows that Appellant and Decedent met in March 2014 and were engaged by December of that year. The two executed the Agreement on June 12, 2017, a little over three years after meeting. At trial, Appellees bore the burden of proving that during these three years Appellant gained independent knowledge of the "full nature, extent, and value" of Decedent's holdings. However, Appellees presented no evidence of such independent knowledge at trial and now merely allege that this period of time was "sufficient" for Appellant to gain "knowledge about the financial affairs of Decedent." Appellant's trial testimony directly contradicts Appellees' allegations. Indeed, as discussed *supra*, Appellant testified that she did not learn that Decedent owned a 401K account, $300,000.00 cash on deposit, and several life insurance policies until after his death. Appellees provided no evidence to challenge this testimony. Thus, the undisputed testimony shows that Appellant did not possess "independent knowledge of the full nature,

extent, and value of" Decedent's holdings when she entered into the Agreement. *Randolph*, 937 S.W.2d at 822 (emphasis added); *In re Estate of Hillis*, 2016 WL 761236, at *8.

Nevertheless, Appellees argue that Appellant should be bound by the Agreement because she had been employed by a "local clinic for more than 20 years in the Business Department," "clearly knew the importance of contracts and their implications[,] and fully understood the importance of this contract." Although Appellant may have had some business experience, the record shows that the timeline under which the Agreement was executed limited Appellant's ability to comprehensively review it or to obtain independent counsel. According to Appellant's testimony, "[a]t no point during the wedding planning did [Decedent] discuss with [Appellant] that he was going to require her to sign an antenuptial agreement." Despite a lengthy engagement, Decedent did not approach Appellant concerning the execution of an antenuptial agreement until two weeks before the wedding date. Furthermore, Appellant was not presented with the complete Agreement until the day she executed it—this was a mere five days before the wedding, which approximately 350 people were scheduled to attend. Regardless of any business experience Appellant may have had, this swift timeline prevented her from conducting a comprehensive review of the Agreement and/or having the opportunity to consult with independent counsel before executing the Agreement.

From the totality of the circumstances, we conclude that the Appellant neither received a "full and fair disclosure" of the "nature, extent, and value" of Decedent's holdings, nor possessed "independent knowledge" of Decedent's assets prior to executing the Agreement. *Randolph*, 937 S.W.2d at 821-22; *In re Estate of Hillis*, 2016 WL 761236, at *8-9. Thus, Appellees failed to meet their burden to show, by a preponderance of the evidence, that Appellant entered into the Agreement "knowledgeably." Accordingly, we conclude that the Agreement is unenforceable. *See* Tenn. Code Ann. § 36-3-501; *Randolph*, 937 S.W.2d at 821; *In re Estate of Hillis*, 2016 WL 761236, at *8-9.[7]

### B. Appellate Attorney's Fees

Appellees argue that they are entitled to attorney's fees accrued on appeal as provided in the Agreement, to-wit:

17. Enforcement.

In the event it becomes reasonably necessary for either to institute or defend legal proceedings to enforce any provision of this Agreement, he or she, if the prevailing party, shall also be entitled to a judgment for reasonable

---

[7] Given our conclusion that Appellant lacked the knowledge required to hold the Agreement enforceable, we need not reach the issue of whether Appellant executed the Agreement under duress.

- 8 -

expenses, including, but not limited to, attorney's fees, litigation expenses, depositions, travel, expert fees, and court costs.

As an initial matter, Appellees failed to raise their request for appellate attorney's fees as an issue for this Court's review. Tennessee Rule of Appellate Procedure 27(b) provides that if an appellee requests relief from this Court, "the brief of the appellee *shall* contain the issues and arguments involved in his request for relief . . . ." Tenn. R. App. P. 27(b). Because "[a]n award of attorney's fees generated in pursuing [an] appeal is a form of relief," our rules require that such a request be stated as an issue on appeal. ***Killingsworth v. Ted Russell Ford, Inc.***, 205 S.W.3d 406, 411 (Tenn. 2006). Any issue not included in the statement of issues presented for review as required by Tennessee Rule of Appellate Procedure 27(b), is not properly before the Court of Appeals. ***Hawkins v. Hart***, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). Here, Appellees failed to designate their request for appellate attorney's fees as an issue in the statement of the issues section of their appellate brief. Appellees' only mention of attorney's fees comes at the end of their brief. By failing to include the issue of appellate attorney's fees in the statement of the issues section of their brief, Appellees have waived the issue. Furthermore, because we have concluded that the Agreement is unenforceable, Appellees are not the prevailing party on appeal and would not be entitled to attorney's fees even if the issue had been properly raised.

## V. Conclusion

For the foregoing reasons, we conclude that the Agreement is unenforceable, and we reverse the trial court's final order. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are assessed to Appellees, Estate of Lester Stokes; Brendi Stokes and Jeremy Stokes, as Co-Executors; and Brendi Stokes, Jeremy Stokes, Charleston Stokes, Brandon Stokes, Justin Gibbs, and Brittany Petway as Beneficiaries, for all of which execution may issue if necessary.

　　　　　　　　　　 s/ Kenny Armstrong　　　　　　　
　　　　　　　　　　KENNY ARMSTRONG, JUDGE